725 P.2d 584

Stella MENDEZ, Plaintiff-Appellant, and Cross-Appellee,

v.

SOUTHWEST COMMUNITY HEALTH SERVICES, d/b/a Presbyterian Hospital, Defendant-Appellee, and Cross-Appellant.

No. 8532.

Court of Appeals of New Mexico.

July 8, 1986.

Certiorari Quashed Sept. 12, 1986.

David A. Archuleta, Albuquerque, for plaintiff-appellant and cross-appellee.

Jason W. Kent, Poole, Tinnin & Martin, P.C., Albuquerque, for defendant-appellee and cross-appellant.

## OPINION

ALARID, Judge.

This is a workmen's compensation case in which the trial court found that plaintiff was totally disabled, but only awarded compensation benefits for a scheduled injury. Plaintiff appeals, contending that she should have been awarded benefits for total disability. Defendant cross-appeals, contending that: (1) there was insufficient evidence of causation; (2) the trial court did not mean to find that plaintiff was totally disabled; (3) there was insufficient evidence of total disability; and (4) there was insufficient evidence that plaintiff's scheduled injury was fully disabling to the scheduled member. We state the facts and discuss causation and disability. We reverse and remand to the district court.

## FACTS

Plaintiff is a thirty-two-year-old woman who quit school during high school. She has a graduate-equivalency diploma. She was a housekeeper at defendant hospital doing heavy cleaning. It involved mopping, dusting and washing, which in turn, involved bending, stooping, reaching and twisting. Prior to her job with defendant, plaintiff had been a housekeeper at a nursing home and in a hotel. She had also been a carhop, a counter worker at a fast-food

restaurant, a diet aide in a hospital, and a trimmer/inspector at a clothing manufacturer. All the prior jobs involved reaching and carrying.

In September, plaintiff slipped and fell while going to her car in defendant's parking lot. The trial court found defendant negligent, and there is no issue as to defendant's negligence on appeal. *See* NMSA 1978, § 52-1-19. Plaintiff fell onto her left side. The fall made her dizzy and her left arm and shoulder hurt. She also had headaches, nausea, and blurred vision. The dizziness, headaches, nausea and blurred vision were attributed to post-traumatic or post-concussive syndrome; such symptoms are frequently seen after head injuries. The post-concussive syndrome had mostly cleared up by November. Plaintiff was treated by a doctor who continued to treat her for neck spasm and pain in the scapula which radiated down the left arm. The doctor explained that the muscle spasm would entrap the nerve causing pain in the back and arm.

This doctor testified that plaintiff had dorsal scapular nerve syndrome and that the syndrome was caused by the accident at work. However, this doctor was unaware that plaintiff had made complaints about pain in her left shoulder at previous times in her life. Other doctors testified that knowledge of the prior shoulder complaints was important in determining what caused plaintiff's current complaints.

The treating doctor released plaintiff to go back to work at plaintiff's request. Plaintiff went back to work in January. By her second day at work, plaintiff was again in pain. Although in pain, and missing days from work, plaintiff worked until April. She was still under the care of the same doctor. That doctor recommended that she not go back to her job as a housekeeper. He stated that she should not stretch her neck, shoulder or arm, nor should she reach or carry objects weighing more than ten pounds. He stated that, if she followed his recommendations, her problem would probably clear up in six months to a year from the time of trial.

Plaintiff testified that she could not perform any of her prior jobs. While testifying about the job as counterperson in a fast-food restaurant, plaintiff first opined that she could do the job. On reflection, however, she changed her testimony and said that it involved too much reaching and twisting. Plaintiff testified that she had applied for clerical positions. Although she did not currently possess the skills for clerical positions, she felt that she could learn on the job. Plaintiff also applied for, and received, unemployment compensation.

A vocational counselor testified that plaintiff could not perform any of her prior jobs. The vocational counselor also tested plaintiff for aptitude and manipulative ability. Plaintiff does not have the aptitude to be a clerical worker. Her mathematical skills are not very good, and she is not attentive to detail. Academic testing showed plaintiff to have fifth grade skills in some subjects and ninth grade skills in others. Plaintiff's manipulative ability is below average because she cannot use her left hand. On tests allowing the use of both hands, plaintiff exclusively used her right hand, leading to fatigue and poor performance. On testing of the individual hands, plaintiff scored average to above average with her right hand and extremely below average with her left hand. On some tests, her left-hand score was only in the first or second percentile.

The trial court found:

4. As a result of the accidental injury, Plaintiff is wholly unable to perform the usual task [sic] of the work she was performing at the time of her injury and is wholly unable to perform any work for which she is fitted by age, education, training, general physical and mental capacity, and previous work experience.

The trial court concluded:

2. Plaintiff is wholly unable to perform the usual task [sic] of the work she was performing at the time of the injury and is wholly unable to perform any work for which she is fitted by age, education, training, general physical and

mental capacity, and previous work experience.

\* \* \* \* \* \*

7. Plaintiff's disability is confined to her non-dextrous upper left extremity at or near the level of the shoulder. There is no evidence of any separate or distinct impairment to any other body function. This is a scheduled injury.

## CAUSATION

Defendant contends that, because the treating physician did not know of prior injuries to plaintiff's shoulder, his testimony on causation was not sufficient evidence upon which the trial court could conclude that the slip and fall at the hospital caused plaintiff's current disability. Defendant relies on *Niederstadt v. Ancho Rico Consolidated Mines*, 88 N.M. 48, 536 P.2d 1104 (Ct.App.1975). *Niederstadt* states, "[when] pertinent information existed about which [the doctor] apparently had no knowledge, his opinion cannot serve as the basis for compliance with [NMSA 1978, Section 52–1–28]." *Id.* at 51, 536 P.2d at 1107.

In this case, plaintiff had three prior complaints about her left shoulder. Four years before the accident at issue, plaintiff was in an automobile accident. The hospital records show that plaintiff complained about pain in her left shoulder, elbow and knee. Plaintiff only remembered hitting her head and being cut and bruised. She did not tell her treating physician that she had complaints about her left shoulder and arm. Another hospital record shows that two years before the accident, plaintiff had complaints of pain in her left shoulder, left scapula, and left upper arm from picking up a linen bag. Plaintiff told her treating physician that this incident caused pain in her lower back. Another hospital record shows that six months before the accident, plaintiff had complaints of a hot, burning sting in her left shoulder blade from reaching to clean a light. Plaintiff's treating physician was completely unaware of this incident.

Defendant states, "A medical opinion which is based on erroneous information about historically undisputed prior injuries should not be given any more weight than an opinion which is offered without the benefit of any such information at all, as in *Niederstadt.*" The opinion in *Niederstadt* on this issue has not been followed in any reported case and has been distinguished in the three cases that have cited it. *See Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979); *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 703 P.2d 925 (Ct.App.1985); *Martinez v. Fluor Utah, Inc.*, 90 N.M. 782, 568 P.2d 618 (Ct.App.1977). We, too, distinguish it here.

In *Niederstadt*, two doctors testified. One had the benefit of a prior doctor's report of a preexisting injury. In light of the prior doctor's report, this doctor testified that plaintiff's only disability was the one that was preexisting. The other doctor did not know about the prior doctor's report and did not know about the preexisting injury. His testimony on causation was disregarded because of his lack of knowledge of the preexisting injury.

Section 52–1–28 requires expert medical testimony when causation is denied. This rule undoubtedly reflects a legislative judgment that neither lay testimony nor the "vast reservoir of human experience" is sufficient to attribute cause to a disability. *Compare Ross v. Sayers Well Servicing Co.*, 76 N.M. 321, 414 P.2d 679 (1966), *with Teal v. Potash Co. of America*, 60 N.M. 409, 292 P.2d 99 (1956).

In *Niederstadt*, a medical expert testified to a lack of causation "in light of" the report of a preexisting condition. In this case, there was no such expert testimony. Rather, defendant would have us conclude that, because there were prior injuries to plaintiff's shoulder, a medical expert would consider them pertinent and would base his opinion on them. Our arriving at such a conclusion, in the absence of expert medical testimony, would violate the policy of the rule set forth in Section 52–1–28. Specifically, we would have to say that, without all knowledge of prior injuries to the same

place on the body, no medical expert could render an opinion on causation. The record fails to contain any expert medical opinion supporting this contention of defendant.

Moreover, given the testimony in this case, we believe that this case provides a peculiarly appropriate opportunity in which to limit the *Niederstadt* rule. The limitation we announce is that *Niederstadt* will only be applicable when, as in *Niederstadt*, there is uncontradicted testimony of a medical expert that the information on prior injuries is pertinent. The treating physician in this case explained that everyone who has fallen on his shoulder will have pain for a few days. If the pain is gone in a few days, it should not cause later problems. Thus, when this doctor is taking a history, he does not care about insignificant pain lasting only a few days.

■ The undisputed, historically accurate medical records upon which defendant relies only show that plaintiff complained of pain on the day the records were created. There was no evidence of the sort of significant pain that the doctor deemed important for purposes of diagnosis. Accordingly, there was no absence of evidence on the issue of causation. If the doctor was lacking factual information, it was not "pertinent" as is required by *Niederstadt.*

## DISABILITY

■ When a finding conflicts with a conclusion or judgment, the finding will prevail as long as it is supported by substantial evidence. *Roybal v. Chavez Concrete & Excavation Contractors, Inc.*, 102 N.M. 428, 696 P.2d 1021 (Ct.App.1985). The court below both found and concluded that plaintiff was totally disabled. However, it also both concluded and entered judgment for a scheduled injury. Thus, pursuant to *Roybal*, the judgment should be reversed and remanded for a new judgment which conforms to the finding of total disability unless one of defendant's arguments seeking to avoid this result has merit.

Defendant has two arguments which seek to avoid this result. First, defendant contends that some of the trial court's oral comments show that it misunderstood the applicable law on this issue and really meant to find only a scheduled injury. Second, defendant presents five reasons why a finding of total disability is unsupported by substantial evidence.

The trial court said that it intended to find a scheduled injury to the shoulder and that plaintiff was "totally disabled within the framework of that injury." The court said that it was so finding because the law did not permit a finding of total disability unless two or more parts of plaintiff's body are disabled. The trial court was mistaken.

■ If the trial court was of the opinion that it could not find total disability arising out of a scheduled injury, it was wrong. *Hise Construction v. Candelaria*, 98 N.M. 759, 652 P.2d 1210 (1982), specifically allows benefits for total disability when the total disability results from the loss of or injury to a scheduled member. The only time there must be an injury to two or more body parts (or a separate and distinct injury, to use the legal language) is when a worker is seeking benefits for partial disability under NMSA 1978, Section 52–1–42. *Hise.* To the extent that the court's oral comments show this misunderstanding, the comments favor the plaintiff. One can interpret the court's comments as stating that, but for the court's belief that it could not award total disability benefits without finding two injuries, it would have awarded total disability benefits.

■ Defendant relies on the court's statement that it intended to find a scheduled injury and total disability within that framework. Defendant construes this language to mean that the court found that plaintiff was entitled to 100% of the scheduled benefits under NMSA 1978, Section 52–1–43(A), rather than a portion of the scheduled benefits under Section 52–1–43(B). However, as we have pointed out, the trial court entered written findings of a total disability. A trial court's oral comments may not provide the basis for reversing a written finding. *Ledbetter v. Webb*, 103 N.M. 597, 711 P.2d 874 (1985). More-

over, even if we considered the oral comments, they can be interpreted equally favorable to plaintiff.

Defendant's second argument presents five reasons why the court's finding of total disability was not supported by substantial evidence: (1) plaintiff admitted that she could probably do one of the jobs she held before the fall; (2) plaintiff said she could do clerical work; (3) plaintiff's vocational expert said that plaintiff could work at two jobs for which she was fitted; (4) plaintiff's receipt of unemployment compensation bars an award of disability as a matter of law; and (5) plaintiff's evidence was not such evidence as a reasonable mind would accept as adequate to support a conclusion.

With the exception of defendant's fourth reason, all of defendant's arguments are attacks on the weight of the evidence. Cases which hold that this court does not weigh the evidence are abundant. *See Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985), and cases cited therein. We discuss defendant's arguments seriatim.

■ When asked whether she could perform counter work at a fast-food restaurant, plaintiff first acknowledged that she could. Then, upon being reminded by her attorney that such work involved reaching and twisting, plaintiff opined that she could not do that work. Defendant "submits that Mendez' original admission stands." No authority is cited for this proposition. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984). In any event, plaintiff's change in testimony, at most, raises an inconsistency in the evidence, which is for the trial court to resolve. *See Tapia v. Panhandle Steel Erectors Co.,* 78 N.M. 86, 428 P.2d 625 (1967).

■ Plaintiff testified that she wanted to do clerical work. Her vocational counselor opined that she was not fitted by aptitude to do such work. Defendant, citing W. Foote and T. Word, *The Role of the Vocational Expert In Worker's Compensation Cases,* 14 N.M.L.Rev. 483 (1984), "submits

that [the vocational counselor's] testimony cannot supercede the implicit contrary judgment of Mendez herself." We find no support for this contention in the article. Again, this contention is answered by the principle that it is for the trial court to weigh and judge the testimony and find the facts. It is entirely reasonable for the trial court to have given more weight to the vocational counselor's objective assessment of plaintiff's abilities than to plaintiff's possibly exaggerated assessment of her own abilities.

■ Defendant contends that the vocational counselor listed two jobs in which plaintiff could work, even with her stated limitations. These jobs were telephone operator and cashier-hostess in a restaurant. However, defendant does not accurately portray the testimony. Regarding the telephone operator job, the witness said that she was referring to a job at an answering service. Plaintiff was tested for this job; she could only accurately take four of six messages. Reviewing the test results, the witness said that plaintiff did not have a high level of potential for success at this occupation. Regarding the cashier-hostess job, the witness said that such a position was not listed in the Dictionary of Occupational Titles, the book from which she worked, which listed common occupations. Because of the qualifications the witness put on her testimony, the trial court could properly give it little weight.

■ Defendant contends that plaintiff's receipt of unemployment compensation benefits should bar her receipt of total disability benefits as a matter of law. Again, the authorities cited do not stand for the proposition urged. 2 A. Larson, *The Law of Workmen's Compensation,* Section 57.65 (1983) and 4 A. Larson, *The Law of Workmen's Compensation,* Section 97.20 (1984), points out that due to the special definition of disability in workmen's compensation statutes, there is no inconsistency in representing that one is able to work, as is necessary to obtain unemployment benefits, while still claiming disability for purposes of workmen's compensation

benefits. Moreover, the states which preclude double recovery in this situation have done so by statute. The New Mexico Legislature has not seen fit to adopt such a statute. *Winter v. Roberson Construction Co.,* 70 N.M. 187, 372 P.2d 381 (1962).

Finally, defendant contends that plaintiff's testimony is not such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Gutierrez v. City of Gallup,* 102 N.M. 647, 699 P.2d 120 (Ct.App.1984). Defendant makes this contention in light of evidence that plaintiff suffered another slip and fall in a department store in April on the last day she worked. Plaintiff claimed to have injured her right side in this fall. She coincidentally had an appointment with her treating physician on that day. He referred her to another doctor. The other doctor testified that he observed no limitation in either of plaintiff's upper extremities, expressly including the left, and that both were normal. Defendant contends that plaintiff chose this doctor and that, because he was selected for treatment unrelated to the industrial accident, his observations are the most unreproachable in the case. Again, this is an argument directed to witness credibility and the weight of the evidence. *See Sanchez.* Accordingly, we find it unpersuasive.

## CONCLUSION

In light of our disposition, we need not reach defendant's issue concerning a partial disability to a scheduled member. The judgment is reversed with instructions for the trial court to enter, on remand, judgment consistent with the finding of total disability.

Plaintiff is awarded $2,500 for the services of her attorney in successfully prosecuting her own appeal, which removed the scheduled injury limitation, and in defending against defendant's appeal. *Romo v. Raton Coca Cola Co.,* 96 N.M. 765, 635 P.2d 320 (Ct.App.1981), and cases cited therein.

IT IS SO ORDERED.

DONNELLY, C.J., and BIVINS, J., concur.