866 P.2d 409

**Debra Anne BREWSTER,
Claimant–Appellant,**

v.

**COOLEY & ASSOCIATES and St. Paul Property & Liability, Respondents–Appellees.**

No. 14549.

Court of Appeals of New Mexico.

Dec. 10, 1993.

682

Gerald A. Hanrahan, Albuquerque, for claimant-appellant.

Thomas R. Mack, Daniel Ramczyk, Miller, Stratvert, Torgerson & Schlenker, P.A., Albuquerque, for respondents-appellees.

## OPINION

MINZNER, Chief Judge.

Claimant appeals the compensation order of the Workers' Compensation Administration (Administration). We discuss (1) timeliness of the appeal; (2) whether the workers' compensation judge (judge) properly awarded Respondents an offset for medical benefits paid under a prior settlement; (3) whether Respondents failed to prove with reasonable certainty that payment of current medical benefits would duplicate Claimant's prior settlement award; and (4) whether the judge erred in failing to prorate the offset over Claimant's life expectancy. For the reasons that follow, we hold that Claimant's appeal was timely filed, that the judge properly awarded Respondents an offset for medical benefits paid pursuant to Claimant's prior settlement, and that, under the circumstances existing here, the judge was not required to prorate the offset. Therefore, we affirm.

## FACTS

Claimant was employed by Cooley & Associates (Cooley) as a vocational rehabilitation counselor and director of counseling. On January 3 and January 25, 1992, she sustained compensable injuries to her lower back in the course and scope of her employment with Cooley. Claimant sought care from Dr. Paul Legant. She filed her claim for compensation benefits on March 31, 1992.

Claimant underwent lumbar spinal surgery on April 2, 1992. Dr. Legant's preoperative and postoperative diagnosis was degenerative joint and degenerative disc disease. Claimant's surgery was necessitated by the January 1992 work injuries. She was discharged from the hospital on April 7, 1992. On her way home, Claimant was injured in an automobile accident, and had to return to the hospital for emergency treatment. The latter injury was determined to be a compensable consequence of the first two accidental injuries. Claimant continued working within her restrictions on a part-time basis from January 25 through April 2, and from April 30 through May 13. Claimant resigned her employment on May 13, 1992.

Claimant sustained a previous lower back injury on February 13, 1987, while employed by a prior employer. She did not miss any work as a result of the prior injury. Claimant did not receive any medical care for her February 1987 injury after June 1988. The Administration approved a lump sum settlement for the February 1987 injury on November 5, 1991. Claimant received compensation benefits of $6,460, as well as $13,165 in lieu of future medical benefits. As a result of the 1987 accident, Claimant sustained a ten per cent permanent physical impairment. Claimant's lower back was asymptomatic between June 1988 and January 2, 1992. She was not a candidate for lumbar spinal surgery prior to January 3, 1992.

Claimant was awarded temporary total disability benefits from January 25 through May 13, 1992 and benefits of $307.30 per week from May 13, 1992, until maximum medical improvement for the January 1992 injuries. Respondents were awarded an offset of $14.07 per week in weekly compensation benefits as a result of the prior settle-

ment regarding the 1987 injury. The judge also awarded Claimant all medical benefits related to the January 1992 injuries, but awarded Respondents an offset for the $13,-165 paid in settlement of future medical benefits for the prior claim.

*JURISDICTION*

■ Respondents have moved to dismiss Claimant's appeal on the ground that it was untimely filed. Appellate rules for the time and place of filing a notice of appeal are mandatory. *Govich v. North Am. Sys., Inc.,* 112 N.M. 226, 230, 814 P.2d 94, 98 (1991).

■ The Administration entered a compensation order on January 19, 1993. [R.P. 143–155] Claimant filed a notice of appeal in this Court on February 18, 1993, thirty days after entry of the compensation order. She served a copy of the notice of appeal on the Administration on the same date. Claimant filed a second notice of appeal with the Administration the following day. Citing SCRA 1986, 12–201(A), –202(A), and –601(B) and (C) (Repl.1992), Respondents contend that Claimant was required to file timely notices of appeal with both this Court and the Administration. Because Claimant filed her notice of appeal with the Administration on the thirty-first day following entry of the compensation order, Respondents reason that this Court is deprived of jurisdiction.

SCRA 12–202(A) states that an appeal from the district court is taken by filing a notice of appeal with the district court clerk within the time allowed by SCRA 12–201. SCRA 12–201(A) provides that the notice of appeal shall be filed within thirty days after the date the order from which an appeal is taken is filed in the district court clerk's office. SCRA 12–601(B) states that an appeal from an administrative agency is taken by filing a notice of appeal with the appellate court clerk within thirty days from the date of the order from which the appeal is taken. *See also Singer v. Furr's, Inc.,* 111 N.M. 220, 221, 804 P.2d 411, 412 (Ct.App.1990). The latter rule also requires service of a copy of the notice of appeal on the administrative agency involved and all parties in accordance with SCRA 1986, 12–307 (Repl.1992).

Respondents' assertion about filing the notice of appeal with the administrative agency apparently derives from SCRA 12–601(C), stating:

**C. Substitution of administrative entity.** Whenever in these rules a duty is to be performed by, service is to be made upon, or reference is made to the district court or a judge or clerk of the district court, the board, commission, administrative agency or official whose action is appealed from shall be substituted for the district court or a judge or clerk of the district court, except that any request for extension of time must be made to the appellate court.

■ Reading SCRA 12–601(B) and (C) together with SCRA 12–202(A), requiring the filing of the notice of appeal with the district court clerk, Respondents argue that appealing from an administrative agency order requires the timely filing of the notice of appeal with both the agency and the appellate court. We believe that such a construction is foreclosed by the language of SCRA 12–601(B), requiring service of a *copy* of the notice of appeal on the agency. We construe rules of procedure in accordance with the same rules as applied to statutes. *State v. Eden,* 108 N.M. 737, 741, 779 P.2d 114, 118 (Ct.App.), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989). Interpreting SCRA 12–601(C) as suggested by Respondents would render superfluous the language regarding service in SCRA 12–601(B). *See Vaughn v. State Taxation & Revenue Dep't,* 98 N.M. 362, 365–66, 648 P.2d 820, 823–24 (Ct.App.1982) (statute must be construed so that no part of the statute is rendered surplusage or superfluous). We also note that SCRA 12–601(B) is titled "[i]nitiating the appeal." *See Serrano v. State, Dep't of Alcoholic Beverage Control,* 113 N.M. 444, 447, 827 P.2d 159, 162 (Ct.App. 1992) (legislatively-enacted section heading may be useful in determining legislative intent in ambiguously drafted statute). Thus, we believe that Claimant's timely filing of her notice of appeal with this Court was all that was required.

We conclude that Claimant timely filed her notice of appeal with this Court, thereby complying with the mandatory requirements

of our rules. Accordingly, we deny Respondents' motion to dismiss for lack of jurisdiction.

## OFFSET FOR MEDICAL EXPENSES

■ Claimant challenges the following finding of fact and conclusions of law.

36. The $13,165 payment for future medical care was paid in anticipation of back surgery substantially similar to the surgical procedure performed on [Claimant] on April 2, 1992.

. . . .

10. [Respondents are] entitled to an offset or reduction of medical benefits due to the extent of $13,165.

. . . .

17. [Respondents] are entitled to a credit for benefits previously paid as part of the lump sum settlement approved on November 8, 1991 as indicated.

. . . .

19. [Claimant] [sic] is entitled to a credit for prepaid medical benefits in the amount of $13,165 as indicated in Conclusion # 10.

NMSA 1978, Section 52–1–47(D) (Repl. Pamp.1991) (effective January 1, 1991), provides:

[T]he compensation benefits payable by reason of disability caused by accidental injury shall be reduced by the compensation benefits paid or payable on account of any prior injury suffered by the worker if compensation benefits in both instances are for injury to the same member or function or different parts of the same member or function or for disfigurement and if the compensation benefits payable on account of the subsequent injury would, in whole or in part, duplicate the benefits paid or payable on account of such prior injury.

Claimant contends that Section 52–1–47(D) does not expressly provide for an offset for prior medical benefits; hence, the judge engaged in improper judicial construction in awarding Respondents the offset in this case. Respondents assert that fundamental fairness and New Mexico's policy against double recovery require an offset for benefits previously paid as a result of Claimant's lower back injury. We conclude that "compensation benefits" as used in Section 52–1–47 include medical expenses.

■ Since Respondents sought the deduction by reason of Claimant's prior injury, they bore the burden of proof of establishing the right to the deduction. *See Lea County Good Samaritan Village v. Wojcik,* 108 N.M. 76, 80, 766 P.2d 920, 924 (Ct.App.1988). An employer seeking an offset or deduction under Section 52–1–47(D) must present evidence of (1) the nature and extent of the claimant's prior disability; (2) the amounts of any previous awards and the amounts designated as compensation benefits; (3) the number of weeks of compensation benefits payable under prior awards or settlements; and (4) the extent to which payments for the last injury will duplicate payments previously made to the claimant for the same bodily member or function. *Munoz v. Deming Truck Terminal,* 110 N.M. 537, 540, 797 P.2d 987, 1000 (Ct.App.1990).

Claimant contends that the offset provision of Section 52–1–47(D) is limited to overlapping weekly compensation benefits. She maintains that the clear language of the statute provides no authority for an offset or deduction for medical expenses. Claimant asserts that this issue was settled in *Lea County Good Samaritan Village.* We disagree. In *Lea County Good Samaritan Village,* we determined the method for calculating the amount of an offset for weekly disability benefits. In determining this offset, the fact-finder is to subtract from the total amount of compensation amounts proven to have been paid for medical expenses, vocational rehabilitation and attorney fees. *Lea County Good Samaritan Village,* 108 N.M. at 82, 766 P.2d at 926. The question before us in *Lea County Good Samaritan Village* was the method for determining the amount of offset for weekly compensation benefits, not whether Section 52–1–47(D) allows an offset for medical expenses. The latter question has not been before us until now.

Claimant also cites *Mendez v. Southwest Community Health Services,* 104 N.M. 608, 725 P.2d 584 (Ct.App.), *cert. quashed,* 104 N.M. 632, 725 P.2d 832 (1986), and *Montney*

*v. State ex rel. State Highway Department,* 108 N.M. 326, 772 P.2d 360 (Ct.App.), *cert. denied,* 108 N.M. 197, 769 P.2d 731 (1989), in support of her argument. In *Mendez,* we rejected an employer's argument that the claimant's receipt of unemployment compensation benefits barred her receipt of total disability benefits as a matter of law. 104 N.M. at 613–14, 725 P.2d at 689–90. We noted that states precluding double recovery in such situations had done so by statute, something our legislature had not seen fit to do. *Id.* at 614, 725 P.2d at 690. In *Montney,* we held that a claimant was not precluded from recovering benefits under both the Workers' Compensation Act and the Public Employees' Retirement Act for the same accidental injury where there was no statutory requirement under either Act for offset or credit or some other method to avoid overlapping or double payment. 108 N.M. at 330, 772 P.2d at 364. We said "where there is no statutory requirement for offset or credit or some other method to avoid overlapping or double payments, we will not do so by judicial construction." *Id.*

■ We are mindful of our duty in construing legislation to avoid reading into the statute provisions that were not intended. *Cf. DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377, 1388 (10th Cir.1990) (court will not imply congressional intent that statute be applied retroactively, where Congress chose to remain silent), *cert. denied,* 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). At the same time, however, we must give effect to the intent of the legislature in construing a statute. *Orcutt v. S & L Paint Contractors, Ltd.,* 109 N.M. 796, 798, 791 P.2d 71, 73 (Ct.App.1990). "In determining this intent, we look primarily to the language used in the statute." *Id.*

While the legislature did not expressly refer to medical expenses in Section 52–1–47(D), we believe such expenses are encompassed by its reference to "compensation benefits payable by reason of disability." In *Schiller v. Southwest Air Rangers, Inc.,* 87 N.M. 476, 478, 535 P.2d 1327, 1329 (1975), our Supreme Court held that medical expenses are "compensation" for purposes of allowing attorney fees under the attorney fees statute. In a plurality opinion decided under the old law, Judge Hendley stated that since medical expenses were found to be compensation for the purposes of allowing attorney fees, "they should be compensation for all purposes." *Briscoe v. Hydro Conduit Corp.,* 88 N.M. 568, 570, 544 P.2d 283, 285 (Ct.App.1975). We see no reason why medical expenses should not be treated similarly for purposes of Section 52–1–47(D), since such expenses are benefits payable by reason of a disability caused by an accidental injury. *See Douglass v. State, Regulation & Licensing Dep't,* 112 N.M. 183, 188, 812 P.2d 1331, 1336 (Ct.App.) (analysis evidences substantial interrelation between pertinent phrases), *cert. denied,* 112 N.M. 77, 811 P.2d 575 (1991). We conclude that the phrase "compensation benefits payable by reason of disability," when read together with the remainder of the statute, evinces a legislative intent that duplicative awards for medical expenses are subject to an offset or credit.

■ Our construction of Section 52–1–47(D) is further bolstered by New Mexico's strong policy against double recovery. *See Washington v. Atchison, Topeka & Santa Fe Ry.,* 114 N.M. 56, 58, 834 P.2d 433, 435 (Ct.App.1992). This policy extends to the area of workers' compensation. *See Carter v. Mountain Bell,* 105 N.M. 17, 23, 727 P.2d 956, 962 (Ct.App.1986); *see also Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 357, 838 P.2d 971, 974 (1992). In *Carter,* we approved a "fundamental fairness" approach, recognizing an employer's prejudgment payment contributions by equitable set-off at the time of judgment. 105 N.M. at 23, 727 P.2d at 962. This policy against double recovery is evident throughout the Workers' Compensation Act (Act). *See, e.g.,* NMSA 1978, § 52–1–65 (Repl.Pamp.1991) (credit for benefits paid under laws of other jurisdictions); NMSA 1978, § 52–1–70 (Repl.Pamp.1991) (offset of unemployment compensation benefits).

## SUFFICIENCY OF THE EVIDENCE

■ We next consider Claimant's challenge concerning the sufficiency of the evidence. The judge found that Claimant's medical expenses were for injury to the same member or function, as well as the extent to

which the payments for the second injury duplicated the payment for the prior injury. *See* § 52–1–47(D); *Lea County Good Samaritan Village*, 108 N.M. at 81, 766 P.2d at 925. Claimant argues that Respondents were required to prove with reasonable medical certainty that she would have incurred $13,165 in medical expenses between January and May 1992 solely as a result of the February 1987 work injury. We reject this contention. Respondents were only required to establish the criteria of *Lea County Good Samaritan Village* by a preponderance of the evidence. *Id.* We review the findings of the judge under the whole record standard of review. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 127, 767 P.2d 363, 366 (Ct. App.), *cert. denied,* 109 N.M. 33, 781 P.2d 305 (1988). We examine all of the evidence, including evidence which "'fairly detracts'" from the administrative findings, as well as that evidence which supports the judgment below. *Id.* 108 N.M. at 129, 767 P.2d at 368 (quoting *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)).

Under this standard, we conclude that there was substantial evidence in the record as a whole to support the judge's finding that the $13,165 payment for future medical care was paid in anticipation of back surgery substantially similar to the surgical procedure ultimately performed in April 1992. Both injuries were to the lower back at L4–5. Dr. Legant testified in his deposition that Claimant's January 1992 injuries aggravated the February 1987 injury. He stated that the degenerative disc disease at L4–5 was a chronic change which preexisted the January 1992 injuries. A radiology report dated January 28, 1992, indicates that Claimant's disc disease had not changed since April 15, 1988. Dr. Legant performed surgery in April 1992 on the same anatomical changes which Claimant presented following the February 1987 injury. It was the same type of surgery considered, but not yet recommended by Dr. Stern, following the 1987 injury.

Finally, Claimant's attorney negotiated a settlement of the claim arising from the February 1987 injury. A series of letters and documents regarding the proposed settlement speaks of Claimant's possible need for future spinal surgery. These letters and documents demonstrate Claimant's understanding of her need for ongoing care for her back problems, as well as the possibility of future surgery. *See Lea County Good Samaritan Village*, 108 N.M. at 81, 766 P.2d at 925 (in determining right to deduction under Section 52–1–47(D), fact-finder may consider evidence of parties' intent at time settlement agreement approved regarding allocation of specific benefits in settlement).

Claimant emphasizes the judge's findings that the January 1992 injuries necessitated her surgery, and that she was not a candidate for lumbar spinal surgery prior to January 3, 1992. However, the need for surgery brought on by the latter injuries does not mean that the earlier injury did not contribute. As stated above, there was substantial evidence that the earlier injury did contribute. Further, Claimant and her attorney contemplated the need for future surgery in settling the prior compensation claim. We hold that Respondents satisfied their burden of proof under Section 52–1–47(D).

## ISSUE CONCERNING PRORATION

■ Claimant's final argument is that any offset should be prorated over her life expectancy. *See Paternoster v. La Cuesta Cabinets, Inc.*, 101 N.M. 773, 779, 689 P.2d 289, 295 (Ct.App.1984) (recognizing potential hardships on workers where employer credits allowed, and suggesting options for repayment). Claimant points out that the judge's award of the $13,165 offset left her with $13,165 in unanticipated debt. Nevertheless, Claimant testified that as of the date of the hearing, she had not spent any part of the $13,165 on medical care. She had settled her prior claim only two months before the January 1992 injuries. Further, Respondents are responsible for all further medical care arising out of Claimant's work injuries with no further offset. Under these circumstances, we cannot say that the judge was required to prorate the offset. There was no evidence of the type of hardship present when an offset is immediately applied to weekly compensation benefits. *See id.* at 778–79, 689 P.2d at 294–95. We do not mean to suggest that proration is never appropriate in cases of

offsets for medical expenses. We only determine that the judge did not abuse his discretion in denying Claimant's request to prorate the offset under the facts of this case.

## CONCLUSION

We conclude that Section 52–1–47(D) authorized the offset for medical expenses in this case. We further determine that the offset was supported by substantial evidence in the whole record. Finally, the judge did not err in failing to prorate the offset. Accordingly, we affirm.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.