1998-NMCA-030

954 P.2d 87

**Wynelle VALDEZ, Worker–Appellant,**

v.

**WAL–MART STORES, INC., and National Union Insurance Company, Employer/Insurer–Appellees.**

**No. 18120.**

Court of Appeals of New Mexico.

Nov. 14, 1997.

Certiorari Denied Feb. 16, 1998.

Victor A. Titus, Titus & Murphy, Farmington, for Worker–Appellant.

Robert A. Martin, Bradley & McCulloch, P.A., Albuquerque, for Employer/Insurer–Appellees.

## OPINION

APODACA, Judge.

1. Wynelle Valdez (Worker) appeals her workers' compensation award of scheduled injury benefits. She challenges the constitutionality of the permanent total disability statute and the failure of the workers' compensation judge (judge) to award total or partial disability benefits.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Worker worked at Wal–Mart as a janitor, waiter, cashier, stocker and food preparer. On April 10, 1993, two connected booths fell on and injured Worker's right foot. In October 1993, Worker quit her job because she could not tolerate the pain. She has had two surgeries on her foot. Physicians have diagnosed Worker with chronic pain and gait derangement. As a result, the physicians recommended various restrictions concerning standing, walking, lifting, and working in high places and on uneven surfaces.

3. Worker filed her first claim for workers' compensation in March 1994, seeking temporary total disability or permanent partial disability. The Workers' Compensation

Administration (Administration) recommended that Worker receive temporary total benefits until a change in circumstances. Worker filed the claim that is the subject of this appeal in May 1996. The Administration recommended that Worker receive scheduled injury compensation benefits, payment of medical bills, and future-related medical benefits. Worker rejected the recommended resolution, however, asserting that she was totally, not partially, disabled. Later, the Administration scheduled a hearing before the judge. The judge found that:

> 23. .... Worker, although very limited to walking and standing for any extended period of time, has not sustained permanent and total loss of use of both hands or both arms or both feet or both legs or both eyes or any two of them as required in § 52–1–25 for permanent total disability benefits at one hundred percent.
>
> ...
>
> 30. Although Worker has significant limitations and cannot return to the job she has previously held because of the walking and standing involved, ... Worker is physically capable of sedentary work.

The judge's conclusions of law included:

> 8. .... Worker has a fifty three percent (53%) physical impairment of her right lower extremity and is entitled to two hundred (200) weeks of scheduled injury disability payments from [the] date of [her] maximum medical improvement, June 7, 1995.
>
> ...
>
> 11. There is no medical evidence that ... Worker has disabling depression, back pain, or any other condition to remove her from the scheduled injury portion of the Workers' Compensation Act, § 52–1–43.
>
> 12. .... Worker is not totally disabled vocationally to remove her from the scheduled injury portion of the Workers' Compensation Act, § 52–2–43 [sic].
>
> 13. .... Worker is not totally disabled as defined by § 52–1–25 (effective January 1, 1991).

On appeal, Worker raises three specific issues: (1) the constitutionality of the permanent total disability benefit statute, (2) the judge's failure to award total disability benefits, and (3) the judge's method of determining the permanent partial disability award.

## II. DISCUSSION

### A. The Permanent Total Disability Benefit Statute and Equal Protection

■ 4. The judge held that Worker was not entitled to permanent total disability benefits under NMSA 1978, Section 52–1–25 (1991). Section 52–1–25(A) provides: "As used in the Workers' Compensation Act [this article], 'permanent total disability' means the permanent and total loss or loss of use of both hands or both arms or both feet or both legs or both eyes or any two of them."

5. Worker argues that Section 52–1–25 violates equal protection because the statute arbitrarily denies total disability to workers who are unable to work and grants total disability to those who can work. Although Employer–Insurer address a due process challenge in their answer brief, we do not discuss this issue because Worker does not raise it in her briefs.

6. The federal and state constitutions provide for equal protection of the laws. The Fourteenth Amendment to the United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1. Similarly, Article II, Section 18 of the New Mexico Constitution states: "No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws." We have interpreted the Equal Protection Clauses of the United States and New Mexico Constitutions "as providing the same protections." *Mieras v. Dyncorp*, 1996 NMCA 095, ¶ 16, 122 N.M. 401, 925 P.2d 518.

■ 7. There are three standards of review that have been traditionally applied to

equal protection challenges of statutes: strict scrutiny, intermediate scrutiny, and the rational basis test. *Id.* ¶ 24; *see also Corn v. New Mexico Educators Fed. Credit Union,* 119 N.M. 199, 203, 889 P.2d 234, 238 (Ct.App. 1994) (recognizing "heightened rational-basis" as an additional standard of review). The applicable standard of review is determined "by the nature and importance of the individual interests asserted and the relationship between the [statutory] classification and the importance of the governmental interest involved." *Mieras,* 1996 NMCA 095, ¶ 24, 122 N.M. 401, 925 P.2d 518. The analyses of "equal protection challenges are generally the same under ... New Mexico and federal law." *Id.*

■ 8. Strict scrutiny applies when legislation infringes fundamental constitutional rights or creates suspect classifications. *Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 693, 763 P.2d 1153, 1158 (1988). Under strict scrutiny (the highest level of scrutiny), differential treatment must be necessary to the achievement of a compelling state interest. *Mieras,* 1996 NMCA 095, ¶ 25, 122 N.M. 401, 925 P.2d 518.

■ 9. Intermediate scrutiny applies to legislation "infringing important but not fundamental rights, and involving sensitive but not suspect classes." *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. Under intermediate scrutiny, the classification must be substantially related to an important government interest. *Id.* at 693–94, 763 P.2d at 1158–59.

■ 10. The rational basis test applies when the statute does not affect fundamental or important rights and does not create suspect or sensitive classifications. *See id.; Mieras,* 1996 NMCA 095, ¶ 27, 122 N.M. 401, 925 P.2d 518. Under the rational basis test, the classification must be rationally related to a legitimate state goal. *Mieras,* 1996 NMCA 095, ¶ 30, 122 N.M. 401, 925 P.2d 518.

11. The threshold inquiry of the equal protection analysis is whether Section 52–1–25 results in dissimilar treatment of similarly-situated individuals. *Madrid v. Saint Joseph Hosp.,* 1996 NMSC 064, 1 35, 122 N.M. 524, 928 P.2d 250. Worker argues that the statute creates two sensitive or suspect classifications. The statute grants total disability to workers who have suffered loss or loss of use of both hands, arms, feet, legs, eyes, or any two of them. These workers may have little or no vocational loss. However, Section 52–1–25 denies total disability to workers with complex vocational disabilities. We believe, however, that this unfortunate effect of the statute does not result in dissimilar treatment of similarly-situated individuals.

12. Section 52–1–25 does not create separate classes of workers subject to differential treatment. The statute evaluates *all* workers equally in its requirements for permanent total disability. *See Montez v. J & B Radiator, Inc.,* 108 N.M. 752, 755, 779 P.2d 129, 132 (Ct.App.1989) (holding that interim partial disability statute did not raise an equal protection claim because "[a]ll workers injured during the effective period ... were subject to the same [requirements for] partial disability"); *Madrid,* 1996 NMSC 064, ¶¶ 32–37, 122 N.M. 524, 928 P.2d 250 (holding that different criterion for impairment evaluation did not result in dissimilar treatment of similarly-situated individuals). Even assuming that Section 52–1–25 does result in dissimilar treatment of similarly-situated individuals, we believe the classification is rationally related to a legitimate state purpose. *See Mieras,* 1996 NMCA 095, ¶ 30, 122 N.M. 401, 925 P.2d 518.

■ 13. We hold that the rational basis test is the appropriate constitutional standard in this appeal. "[L]egislative acts are presumptively valid and normally are subjected to the rational basis test." *Richardson,* 107 N.M. at 693, 763 P.2d at 1158. Section 52–1–25 neither creates suspect or sensitive classifications nor infringes fundamental or important rights. *See Richardson,* 107 N.M. at 693–94, 696, 763 P.2d at 1158–59, 1161; *Madrid,* 1996 NMSC 064, ¶¶ 32–37, 122 N.M. 524, 928 P.2d 250 (holding that different criterion for impairment evaluation was rationally related to statute's purpose of providing workers' compensation benefits based on current medical advances).

14. Worker relies on *Richardson*, 107 N.M. at 698, 763 P.2d at 1163, and *Trujillo v. City of Albuquerque*, 119 N.M. 602, 893 P.2d 1006 (1995), to support application of the intermediate standard of review. These cases are distinguishable because they concern recovery in tort actions. In tort claims, the individual has an important interest in full compensation for his or her injuries, especially when those injuries are not the individual's fault. *Richardson*, 107 N.M. at 698, 763 P.2d at 1163. This concern is not present in workers' compensation claims because the legislature has developed a comprehensive scheme to assure prompt recovery by injured workers. *See Mieras*, 1996 NMCA 095, ¶ 30, 122 N.M. 401, 925 P.2d 518; *Sanchez v. M.M. Sundt Constr. Co.*, 103 N.M. 294, 296–97, 706 P.2d 158, 160–61 (Ct. App.1985). The Workers' Compensation Act, NMSA 1978, §§ 52–1–1 to –70 (1987, as amended through 1993), "supplant[s] the uncertainties of tort remedies and the burden of establishing ... negligence with a system of expeditious and scheduled payments of lost wages [for] accidental injury [occurring] in the course and scope of employment." *Sanchez*, 103 N.M. at 296–97, 706 P.2d at 160–61.

15. Section 52–1–25 is rationally related to legitimate goals. *See Mieras*, 1996 NMCA 095, ¶ 30, 122 N.M. 401, 925 P.2d 518. The purpose of the Workers' Compensation Act is to "avoid uncertainty in litigation and to assure injured work[ers] prompt payment of compensation." *Mirabal v. International Minerals & Chem. Corp.*, 77 N.M. 576, 578, 425 P.2d 740, 742 (1967). The permanent total disability statute serves this purpose by creating a more objective method of determining disability. This objective standard promotes predictability and certainty of benefit determination and results in more efficient delivery of benefits. Although Section 52–1–25 may compromise fairness in pursuit of objectivity, predictability, and efficiency, we do not "inquire into the wisdom, policy, or justness of legislation" under the minimal scrutiny test. *Richardson*, 107 N.M. at 693, 763 P.2d at 1158. In summary, we hold that the permanent total disability statute withstands scrutiny under the rational basis test and is therefore constitutional.

**B. The Judge's Failure To Award Worker Total Disability Benefits**

16. Worker next argues that the judge erred in not awarding Worker total disability benefits under Section 52–1–25. Because our decision turns on the interpretation of the permanent total disability statute, we review this question of law de nova. *See Krahling v. First Trust Nat'l Ass'n*, 1997 NMCA 082, ¶ 9, 123 N.M. 685, 944 P.2d 914.

17. Worker received scheduled injury benefits under NMSA 1978, Section 52–1–43 (1989). She contends that the scheduled injury section allows for total disability where the disability arose solely from injuries to a specific body member scheduled in Section 52–1–43. *See American Tank & Steel Corp. v. Thompson*, 90 N.M. 513, 515, 565 P.2d 1030, 1032 (1977) (holding that scheduled injury may amount to a disability); *Mendez v. Southwest Community Health Servs.*, 104 N.M. 608, 612, 725 P.2d 584, 588 (Ct.App. 1986) (holding that total disability benefits are allowed "when the total disability results from the loss of or injury to a scheduled member").

18. The determination of total disability, however, differed when *American Tank* and *Mendez*, which are relied on by Worker, were decided. The applicable total disability statutes in these two cases defined total disability as:

> a condition whereby a work[er], by reason of an injury arising out of, and in the course of his employment, is wholly unable to perform the usual tasks in the work he was performing at the time of his injury, and is wholly unable to perform any work for which he is fitted by age, education, training, general physical and mental capacity, and previous work experience.

*American Tank*, 90 N.M. at 514, 565 P.2d at 1031 (quoting NMSA 1953, § 59–10–12.18 (repealed 1978)); *see also Mendez*, 104 N.M. at 610, 613, 725 P.2d at 586, 589 (considering worker's ability to perform prior jobs and worker's age, education, training, physical and mental capacities, and previous work experience in providing total disability benefits); *Zengerle v. City of Socorro*, 105 N.M.

797, 800, 737 P.2d 1174, 1177 (Ct.App.1986), (quoting NMSA 1978, § 52–1–24 (prior to 1986 amendment) defining total disability), *overruled on other grounds by Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 827 P.2d 838 (Ct.App.1991).

19. The standard for total disability in *American Tank* and *Mendez* focused on the worker's ability to perform work. *See American Tank*, 90 N.M. at 514–15, 565 P.2d at 1031–32; *Mendez*, 104 N.M. at 612–13, 725 P.2d at 588–89. Both *American Tank* and *Mendez* reasoned that the total disability statute granted total disability for the workers' scheduled injuries because the workers were unable to perform their usual tasks. *American Tank*, 90 N.M. at 514–15, 565 P.2d at 1031–32; *Mendez*, 104 N.M. at 612–13, 725 P.2d at 588–89. The total disability statutes in effect when those cases were decided expressly mandated this test. *See* §§ 59–10–12 .18, 52–1–24 (prior to 1986 amendment). The total disability statute applicable here, on the other hand, replaced the inquiry regarding capability to perform work with specific, enumerated injuries that the legislature considered as constituting total disability. Section 52–1–25(A) defines "permanent total disability" as "the permanent and total loss or loss of use of both hands or both arms or both feet or both legs or both eyes or any two of them." As a result of this legislative change, the evaluation of a worker's ability to perform work for purposes of total disability benefits is obsolete under the present statute. *See id.* Consequently, total disability benefits are not available for Worker's scheduled injury because it does not meet the statutory requirements. *See id.*

20. Similarly, Worker's other arguments regarding the judge's failure to award Worker total disability benefits do not involve Section 52–1–25. Worker argues that we should determine total disability by factors applicable to the partial disability analysis. Worker challenges: (1) the judge's finding that Worker is physically capable of sedentary work, (2) his conclusion that Worker has no condition to remove her from the scheduled injury section, and (3) the judge's failure to award an impairment rating for Worker's pain. These factors, however, do not bear on the determination of total disability benefits. *See* § 52–1–25. Rather, they are considerations of partial disability determination. *See* NMSA 1978, §§ 52–1–26 to –26.4 (1990, effective Jan. 1, 1991); NMSA 1978, §§ 52–1–42 to –43 (1991).

21. As Worker notes in her brief, she seeks *total* disability, not an increase in partial disability benefits through the formula in Section 52–1–26. The weakness in Worker's argument in this regard, however, is that the considerations for partial disability determination were not extended to total disability by the legislature. *See* § 52–1–25. Consequently, the judge did not err in failing to award Worker total disability benefits.

## C. Analysis of The Judge's Scheduled Injury Award

22. Worker challenges the judge's award of scheduled injury benefits under Section 52–1–43. Worker argues that the judge should have granted her partial disability benefits under Section 52–1–26. Viewing the evidence " 'in the light most favorable to the agency's decision,' " we examine the whole record to determine if substantial evidence supports the judge's award. *Martinez v. Southwest Landfills, Inc.*, 1993 NMCA 020, 115 N.M. 181, 185, 848 P.2d 1108, 1112 (quoting *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.1988)).

23. Worker asserts that the judge erred in solely relying on the impairment rating in the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) (*AMA Guides*) to determine loss of use under Section 52–1–43. *See Madrid*, 1996 NMSC 064, ¶ 19, 122 N.M. 524, 928 P.2d 250; *Peterson v. Northern Home Care*, 1996 NMCA 030, ¶ 18, 121 N.M. 439, 912 P.2d 831; *Lucero v. Smith's Food & Drug Ctrs., Inc.*, 118 N.M. 35, 38, 878 P.2d 353, 356 (Ct.App.1994). She also contends that the judge relied on chronic pain to award Worker scheduled injury benefits for her leg rather than for her foot. Worker argues that the judge should have considered pain and vocational loss to award her partial disability. *See Gordon v. Dennisson Doors,*

*Inc.*, 114 N.M. 767, 770, 845 P.2d 861, 864 (Ct.App.1992); *Peterson*, 1996 NMCA 030, ¶ 18, 121 N.M. 439, 912 P.2d 831.

24. The record reveals, however, that the judge did not solely rely on the *AMA Guides'* impairment rating to determine Worker's loss of use. The judge's findings of fact indicate that he was aware of Worker's vocational background and limitations resulting from her injury. The compensation order establishes that the judge considered Worker's pain. Worker and her doctors testified concerning the pain. Worker stated that she experienced pain in her foot and leg. Dr. Diskant testified that Worker had a 74% impairment of the foot, which corresponded to a 52% impairment of the lower extremity. Dr. Diskant also believed that the impairment tables in the *AMA Guides* consider pain in calculating impairment. The judge concluded that Worker had a 53% impairment of her right lower extremity. The distinction between the *AMA Guides* and the judge's impairment ratings reveals that the judge was not constrained by the *AMA Guides*. Rather, the judge's impairment rating illustrated that he relied on both Worker's and the doctors' testimonies in his determination. Viewing the evidence in the light most favorable to the judge's decision, we hold that substantial evidence supported his award of scheduled injury benefits.

## III. CONCLUSION

25. We understand why some applications of the total disability statute may be considered by some to be impractical and even inequitable. We fully appreciate Worker's example that an accountant who has lost both feet would qualify for permanent total disability benefits, in spite of the fact that he or she would be able to continue his or her work as an accountant. The legislative changes of our state's workers' compensation law during the past twenty years or so have significantly altered the rights and liabilities of both workers and their employers. This appeal illustrates that, in the view of some, these changes may not have been an improvement that is considered fair to both workers and their employers. Our case law, however, requires us not to question the policy, wisdom, or justness of the legislature's enactments. In this appeal, our deference to the legislature compels us to uphold the statute's constitutionality.

26. Having given careful consideration to Worker's arguments, we conclude that the judge's award of scheduled injury benefits was correct, that Worker has not demonstrated that she meets the requirements for total disability, and that substantial evidence supports the judge's decision.

27. **IT IS SO ORDERED.**

DONNELLY and WECHSLER, JJ., concur.