675 So.2d 587 (1996)
Morton BARRY, Petitioner,
v.
BURDINES, et al., Respondents.
No. 86365.
Supreme Court of Florida.
June 13, 1996.
*588 Alex P. Lancaster, Amy L. Sergent, and Deborah L. Conley of Lancaster & Eure, P.A., Sarasota, for Petitioner.
M. Todd Merritt and Cindy R. Galen of The O'Riorden Law Firm, P.A., Sarasota, for Respondent.
Robert A. Butterworth, Attorney General, and Stephanie A. Daniel, Assistant Attorney General, Tallahassee, for State of Florida, Intervenor.
Fletcher N. Baldwin, Jr., University of Florida College of Law, Gainesville, and Jerold Feuer, Miami, for Florida Workers' Advocates, Amicus Curiae.
Claire Hamner Matturro, Cairo, Georgia, for Academy of Florida Trial Attorneys, Amicus Curiae.
Edward A. Dion, General Counsel, and David C. Hawkins, Senior Attorney, Tallahassee, for Florida Department of Labor and Employment Security, Division of Workers' Compensation, Amicus Curiae.
SHAW, Justice.
We have for review Barry v. Burdines, 667 So.2d 241 (Fla. 1st DCA 1995), wherein the district court certified:
Whether Section 440.15(3)(b)4.d[.], Florida Statutes (1991), is subject to and comports with the requirements of Title I of the Americans with Disabilities Act?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer in the affirmative and approve Barry.
Morton Barry was injured August 6, 1992, while employed at Burdines and received temporary total disability compensation until November 23, 1992, when he reached "maximum medical improvement." Barry returned to work in a limited capacity November 23, 1992, and began receiving wage-loss benefits for a period of seventy-eight weeks based on an impairment rating of nine percent *589 under section 440.15(3)(b)4.d., Florida Statutes (1991).[1]
Barry filed this workers' compensation action claiming that section 440.15(3)(b)4.d. violates Title I of the Americans with Disabilities Act[2] (ADA) because it segregates disabled individuals arbitrarily and deprives the disabled of an individualized assessment of their disabilities. The claims judge ruled against Barry and the district court affirmed, certifying the above question.
The threshold issue is whether section 440.15(3)(b)4.d. is subject to the ADA. Burdines argues that the ADA is inapplicable because compensation under the Florida Workers' Compensation Act[3] (FWCA) is not an employer-controlled benefit of employment. We disagree.
The ADA is sufficiently broad to encompass the entitlement to workers' compensation benefits. See generally 42 U.S.C. § 12112(a) (Supp. III 1991). The Equal Employment Opportunity Commission (EEOC), which is charged with enforcing the ADA, has concluded that the ADA "supersedes any conflicting state workers' compensation laws." Americans with Disabilities Act of 1990: EEOC Technical Assistance Manual and Resource Directory, § 9.6.b. (1992). Furthermore, the preemption clause within the ADA itself implies as much. See 42 U.S.C. § 12201(b) (Supp. III 1991). See also Harding v. Winn-Dixie Stores, Inc., 907 F.Supp. 386 (M.D.Fla.1995) (entitlement to workers' compensation benefits is subject to the ADA). Accordingly, we find that section 440.15(3)(b)4.d. is subject to the ADA.
The next question is whether section 440.15(3)(b)4.d. comports with the ADA. Barry argues that the impairment classifications are arbitrary, are not rationally related to the goal of compensating disabled workers for lost earnings, and do not provide claimants with sufficiently individualized assessments. We disagree.
The ADA and the FWCA were designed to fulfill different goals. The ADA was intended to prevent the prejudicial treatment of disabled persons and to allow such persons to compete in the workplace. See 29 C.F.R. pt. 1630, app. (1995). The ADA does not purport to guarantee equal rights to workers' compensation benefits for all handicapped persons regardless of their varying abilities to work. Rather, the ADA simply requires the removal of all "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classifications." Griggs v. Duke Power Co., 401 U.S. 424, 430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).
The FWCA, on the other hand, was created to provide an injured employee with an efficient delivery of disability and medical benefits at a reasonable cost to the employer. See § 440.015, Fla.Stat. (1991). The FWCA imposes no barriers such as those mentioned above in Griggs, and the criteria employed by the FWCA are not inadequate, arbitrary, or discriminatory. The impairment system set forth in section 440.15(3)(b)4.d. is a fair and efficient method for handling the large volume of workers' compensation claims filed in this state, and the assessment procedure is sufficiently individualized to satisfy the ADA. We conclude that section 440.15(3)(b)4.d. comports with the ADA.
In addressing Barry's claim that the ADA preempts section 440.15(3)(b)4.d., this Court need look only to the language of the ADA itself, which provides that the ADA shall not be construed as invalidating any federal or state law that provides equal or greater protection. See 42 U.S.C. § 12201(b) (Supp. III *590 1991). In light of our finding that section 440.15(3)(b)4.d. comports with the ADA, we conclude that the ADA does not preempt this section.
Finally, to succeed in his claim that the assignment of benefits in this particular case violates the ADA, Barry must show either a discriminatory intent or result. See generally 42 U.S.C. §§ 12112(a)-(b) (Supp. III 1991); 29 C.F.R. §§ 1630.1, 1630.5, 1630.7 (1995). He has shown neither.
We answer the certified question in the affirmative and approve Barry.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Section 440.15(3)(b)4.d., Florida Statutes (1991), provides in part:

d. For injuries occurring after June 30, 1990, the employee's eligibility for wage-loss benefits shall be determined according to the following schedule:
(I) Twenty-six weeks of eligibility for permanent impairment ratings up to and including 3 percent;
(II) Fifty-two weeks of eligibility for permanent impairment ratings greater than 3 and up to and including 6 percent;
(III) Seventy-eight weeks of eligibility for permanent impairment ratings greater than 6 and up to and including 9 percent....
[2] 42 U.S.C. ch. 126 (Supp. III 1991).
[3] Ch. 440, Fla.Stat. (1991).