2003-NMCA-058

67 P.3d 908

**Christy Ann BREEN and Dahlia Carrasco, Claimants–Appellants,**

v.

**CARLSBAD MUNICIPAL SCHOOLS, and New Mexico Public Schools Insurance Authority, Respondents–Appellees.**

Nos. 22,858, 22,859.

Court of Appeals of New Mexico.

Feb. 12, 2003.

Certiorari Granted, No. 27,950, April 1, 2003.

Freddie J. Romero, Cusack, Jaramillo, Romero & Associates, P.C. Roswell, NM, for Appellants.

Phyllis S. Lynn, Yenson, Lynn, Allen & Wosick, P.C., Albuquerque, NM, for Appellees.

## OPINION

PICKARD, Judge.

{1} This is a consolidated appeal from orders of the Workers' Compensation Judge (WCJ) denying Workers' applications for supplementary compensation orders. In it, we consider whether provisions in the Workers' Compensation Act (WCA), NMSA 1978, §§ 52–1–41 (1999) and –42 (1990), that limit the duration of benefit payments for those workers disabled due to mental impairment, violate the equal protection clauses of the United States Constitution and the New Mexico Constitution. We also consider whether the same provisions violate the mandate of the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101 through –12213 (2000). We hold that there is neither a constitutional nor a statutory violation.

## I. FACTS AND BACKGROUND

{2} In August 1999, the WCJ entered compensation orders awarding temporary total disability benefits to Workers Breen and Carrasco (Workers) for injuries that resulted in temporary total disability due to a conditioned psychological response to odors and dust. Employer Carlsbad Municipal Schools and Insurer New Mexico Public School Insurance Authority (Employer/Insurer) appealed these compensation orders to this Court, which upheld the orders in a memo-randum opinion filed on May 29, 2001. Following the mandate from this Court to the district court, Employer/Insurer submitted payment to Workers that totaled 100 weeks of compensation pursuant to the WCA. *See* §§ 52–1–41(B); –42(A)(3).

{3} Workers then moved for supplementary compensation orders, arguing that since this Court upheld the award of temporary total disability benefits and did not limit them, Workers were due more than the 100 weeks of benefits because the WCJ's original order was "ongoing." After a hearing, the WCJ found that Workers suffered from a primary mental impairment and were due only 100 weeks of compensation under the WCA. *See id.* Workers now appeal the WCJ's order of 100 weeks of compensation. They raise three issues on appeal: (1) the WCJ erred in refusing to enforce his original compensation orders that were upheld on appeal, (2) the provisions in the WCA that limit benefits of workers disabled due to mental impairments violate the equal protection clauses of the United States Constitution and the New Mexico Constitution, and (3) the provisions in the WCA that limit benefits of workers disabled due to mental impairments violate the ADA. We affirm the orders of the WCJ.

## II. DISCUSSION

### A. ENFORCEMENT OF ORIGINAL ORDER

{4} Workers argue that the WCJ erred in awarding only 100 weeks of benefits after this Court affirmed the WCJ's original findings of compensability and temporary total disability. They claim that because the WCJ's compensation orders provided for benefits that were "ongoing" and because those orders were upheld by this Court on appeal, the WCJ's subsequent denial of benefits beyond 100 weeks pursuant to Section 52–1–41(B) contravenes this Court's order on remand.

{5} In a memorandum decision filed on May 29, 2001, this Court concluded that Workers suffered from a primary mental impairment and affirmed the WCJ's award of temporary total disability benefits to them.

There is nothing in the opinion discussing the level or duration of benefits to be awarded. The subsequent mandate from this Court to the district court remanded the case "for any further proceedings consistent with said decision." Accordingly, the Employer/Insurer paid Workers for 100 weeks of disability, and the WCJ upheld this amount after a subsequent hearing.

{6} The award of 100 weeks of benefits is consistent with Section 52–1–41(B), which limits the period of compensation for total disability resulting from primary mental impairment to 100 weeks. Therefore, the trial court's award of 100 weeks of disability is entirely consistent with this Court's conclusion that Workers suffered from a primary mental impairment. We see no reason to disturb the WCJ's award of 100 weeks of benefits pursuant to this Court's mandate and to Section 52–1–41(B).

{7} Workers rely on a decision from a Missouri Court of Appeals for the general rule that "after affirmance of a lower court judgment any subsequent orders or adjudications in the cause must be confined to those necessary to execute the judgment." *McPherson Redevelopment Corp. v. Shelton,* 807 S.W.2d 203, 205 (Mo.Ct.App.1991) (internal quotation marks and citations omitted). Rather than support Workers' argument, we find that this general rule supports our conclusion that the WCJ necessarily relied on the appropriate statute to execute our judgment that the Workers suffered from a primary mental impairment. Accordingly, we hold that the WCJ did not err in its award of 100 weeks of benefits to Workers.

## B. EQUAL PROTECTION

{8} Workers argue that Sections 52–1–41(B) and 52–1–42(A)(3) treat similarly situated individuals differently: those who are temporarily totally disabled due to physical impairment and those who are temporarily totally disabled due to primary mental impairment. Because workers with physical impairments can receive up to 500 or 700 weeks of benefits and workers with primary mental impairments are capped at 100 weeks of benefits, Workers assert that Section 52–1–41(B), capping their benefits at 100 weeks, violates the equal protection rights guaranteed by the United States and New Mexico Constitutions.

### 1. Standard of Review

{9} The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The New Mexico Constitution also provides that no person shall be "denied equal protection of the laws." N.M. Const. art. II, § 18. The equal protection clauses in the United States and New Mexico Constitutions provide the same protections. *See Valdez v. Wal–Mart Stores, Inc.,* 1998–NMCA–030, ¶ 6, 124 N.M. 655, 954 P.2d 87. Equal protection of the laws "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). An equal protection challenge of a classification based on economic or social welfare distinctions is subject to a rational basis review by this Court, meaning that the statute in question must be rationally related to a legitimate government purpose. *See Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *see also Valdez,* 1998–NMCA–030, ¶¶ 12–13, 124 N.M. 655, 954 P.2d 87 (applying rational basis standard to review of Section 52–1–25 of the Workers' Compensation Act); *Trujillo v. City of Albuquerque,* 1998–NMSC–031, ¶¶ 2–3, 125 N.M. 721, 965 P.2d 305 (holding that a constitutional challenge to the cap on damages in the New Mexico Tort Claims Act is subject to a rational basis review). A statute that distinguishes between those with mental impairments and those without mental impairments falls into this category and requires a rational basis review. *See City of Cleburne,* 473 U.S. at 446, 105 S.Ct. 3249.

### 2. Analysis

{10} The threshold inquiry of an equal protection analysis is whether the statute in question, in this case Sections 52–1–41(B) and –42(A)(3), results in dissimilar treatment of similarly situated workers.

*Valdez,* 1998–NMCA–030, ¶ 11, 124 N.M. 655, 954 P.2d 87. We hold that is does. As Workers argue, Section 52–1–41 provides lifelong compensation benefits for workers totally disabled due to physical impairments, Section 52–1–41(A), but caps compensation benefits for workers totally disabled due to mental impairments at 100 weeks, Section 52–1–41(B). Similarly, Section 52–1–42(A)(1) and (2) provides compensation benefits for permanent partial disability due to physical impairments for up to 700 weeks, but caps compensation benefits for permanent partial disability due to mental impairments at 100 weeks, Section 52–1–42(A)(3) and (4). This constitutes dissimilar treatment between those totally or permanently disabled with physical impairments and those totally or permanently disabled with mental impairments.

{11} Having determined that similarly situated workers are treated dissimilarly, our next inquiry is whether this disparity is rationally related to a legitimate government purpose. We hold that it is. "Legislative acts are presumptively valid[.]" *Valdez,* 1998–NMCA–030, ¶ 13, 124 N.M. 655, 954 P.2d 87 (internal quotation marks and citation omitted). This Court has already determined that the WCA creates an objective standard that promotes predictability and certainty of benefit determination resulting in efficient delivery of benefits. *Id.* ¶ 15 (internal quotation marks and citation omitted). That this determination was made before the Supreme Court's announcement in *Trujillo,* 1998–NMSC–031, ¶¶ 30–32, 125 N.M. 721, 965 P.2d 305, that rational basis review would be real review does not detract from the logical force of it. Similarly, fairness may be compromised in pursuit of predictable, efficient results, but this Court does not inquire into the "wisdom, policy or justness" of legislation under a rational basis scrutiny. *Valdez,* 1998–NMCA–030, ¶ 13, 124 N.M. 655, 954 P.2d 87. That some inequality results in the area of economic and social welfare from a statutory classification does not render the statute unconstitutional, as long as it is reasonable. *See Sanchez v. M.M. Sundt Constr. Co.,* 103 N.M. 294, 297, 706 P.2d 158, 161 (Ct.App.1985) (finding that compensation limitations imposed under Sec-

tion 52–1–46(A) did not violate equal protection clauses).

{12} Courts traditionally have been reluctant to allow recovery for any mental suffering due to "fear of fraudulent claims and the lack of judicial expertise for evaluating injury unaccompanied by observable physical manifestations." *Candelaria v. Gen. Elec. Co.,* 105 N.M. 167, 173, 730 P.2d 470, 476 (Ct.App. 1986), *superseded by statute on other grounds as stated in Jensen v. N.M. State Police,* 109 N.M. 626, 628, 788 P.2d 382, 384 (Ct.App.1990). This Court has also implicitly recognized the legitimacy of the goal of reducing fraudulent claims in order to preserve the workers' compensation system. *See Holford v. Regents of the Univ. of Cal.,* 110 N.M. 366, 368, 796 P.2d 259, 261 (Ct.App.1990) (finding the limitations on proof of primary mental impairment in NMSA 1978, § 52–1–24(B) (1990) to serve legitimate government purpose, making the statute constitutional). Preventing fraudulent claims, limiting recovery for injuries which are difficult to determine, and preserving the financial viability of workers' compensation are all legitimate government purposes that promote the goals of predictability and efficiency.

{13} Furthermore, the wording of the WCA indicates that "the legislature clearly intended to restrict coverage for mental injuries" because of the restrictive circumstances under which mental injuries are compensated and by the limitations in the duration of benefits for mental injuries. *Fitzgerald v. Open Hands,* 115 N.M. 210, 213, 848 P.2d 1137, 1140 (Ct.App.1993), *abrogated on other grounds by Chavez v. Mountain States Constructors,* 1996–NMSC–070, ¶ 43, 122 N.M. 579, 929 P.2d 971. Having decided that this statute is rationally related to legitimate government purposes, we will not question further the wisdom of what is the legislature's clear intent. *See Valdez,* 1998–NMCA–030, ¶ 15, 124 N.M. 655, 954 P.2d 87.

{14} Accordingly, we hold that Sections 52–1–41(B) and 52–1–42(A)(3), which result in dissimilar treatment of similarly situated workers, do not violate the equal protection clauses of the United States Constitution or the New Mexico Constitution because they

are rationally related to legitimate government purposes.

## C. AMERICANS WITH DISABILITIES ACT

{15} Workers claim that Sections 52–1–41(B) and 52–1–42(A)(3) establish disparate treatment that violates the ADA. They essentially make a Title I claim, citing 42 U.S.C. § 12112(a) of the ADA. They argue that Workers' Compensation is a privilege of employment, and as such, New Mexico's scheme that treats persons temporarily totally disabled due to a mental impairment differently from persons temporarily totally disabled due to a physical impairment is discriminatory in regard to a privilege of employment and violative of the ADA. *See id.; see also Harding v. Winn–Dixie Stores, Inc.*, 907 F.Supp. 386, 390 (M.D.Fla.1995) ("[A]n entitlement to workers' compensation benefits is a privilege of employment subject to the antidiscrimination provisions of the ADA.").

{16} Employer/Insurer essentially argues that Workers do not have standing to bring an ADA claim. To establish a prima facie case under the ADA, a plaintiff must demonstrate (1) that she is disabled within the meaning of the ADA, (2) that she is qualified-with or without reasonable accommodation, and (3) that she was discriminated against because of her disability. *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998). Employer/Insurer further argues that even if Workers did have standing, they have introduced no evidence to prove that Employer/Insurer had discriminatory intent or that the Workers' Compensation scheme resulted in disparate impact, the two theories under which an ADA claim must fall. *See* § 12112(a) and (b)(3); 29 C.F.R. § 1630.7 (2001).

{17} We understand Workers' argument to be that they are not bringing a claim under the ADA per se, but are seeking to have its provisions enforced so as to preempt Sections 52–1–41 and –42 of New Mexico's Workers' Compensation statute. Under the preemption doctrine, rooted in the supremacy clause of Article VI of the United States Constitution, states "may not frustrate either through legislation or judicial interpretation" federal law. *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 7, 126 N.M. 396, 970 P.2d 582 (internal citations omitted). Statutory interpretation is a question of law which this Court reviews de novo. *Morgan Keegan Mortg. Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

### 1. Purposes of WCA and ADA

{18} The purpose of the WCA is "to provide a workers' benefit system . . . to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers." NMSA 1978, § 52–5–1 (1990). "The workers' benefit system in New Mexico is based on a mutual renunciation of common law rights and defenses by employers and employees alike." *Id.* In short, the act is a legislative balance of an employer's assumption of liability without fault and a worker's exclusive but efficient remedy. *See id.; Sanchez*, 103 N.M. at 296–97, 706 P.2d at 160–61. In order to be eligible for benefits an employee must show total disability, partial disability, permanent partial disability, injury to specific body members, facial disfigurement, hernia, or death. NMSA 1978, §§ 52–1–41 through –46 (1987, as amended through 1999). The amount and duration of benefits paid are determined according to the statutory scheme that outlines the degree of the impairment, loss of use, and ability to work. *Id.* Thus, the WCA provides an exclusive and efficient remedy for injured employees by using an objective standard to determine levels and duration of disability benefits. *Valdez*, 1998–NMCA–030, ¶ 15, 124 N.M. 655, 954 P.2d 87.

{19} The purpose of the ADA is to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101. It provides that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job

training, and other terms, conditions and privileges of employment.

42 U.S.C. § 12112(a). A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, the ADA provides a remedy for disabled workers who can work but have somehow been discriminated against because of a disability.

■ {20} The ADA does not abrogate or invalidate or limit remedies, rights, and procedures of any other federal or state laws that provide "greater or equal protection for the rights of individuals with disabilities than are afforded by this chapter." 42 U.S.C. § 12201(b). New Mexico's WCA and the ADA do not conflict with each other, but rather they have different purposes and provide remedies for different grievances. *See e.g., Harding,* 907 F.Supp. at 391–92 (finding that ADA does not require Florida Workers' Compensation Act to provide equal eligibility in benefits); *Hensley v. Punta Gorda,* 686 So.2d 724, 728 (Fla.Dist.Ct.App.1997) (finding no inconsistency between the goals of the ADA and Florida's Workers' Compensation Act); *Bailey v. Reynolds Metals,* 153 Or. App. 498, 959 P.2d 84, 89 (1998) (finding that Oregon's Workers' Compensation benefits protect workers precisely when the workers are not protected by the ADA); *see also* EEOC Compliance Manual, Vol. II, § 138, No. 915.002 (Sept. 3, 1996) (stating that the purposes of the ADA and Workers' Compensation Laws are not in conflict).

### 2. Analysis of Workers' Claim

{21} Workers do not provide, nor can we find, any authority that directly addresses their argument that in a workers' compensation scheme, persons with disabilities due to mental impairment cannot be treated differently under the ADA than persons with disabilities due to physical impairments. However, many courts have found, in similar contexts, that the ADA does not require equal benefits be given to all disabled persons equally. As a starting point, we look to the United States Supreme Court's interpre-tation of the Rehabilitation Act of 1973, which standards are applied to ADA provisions. *See* 42 U.S.C. § 12201(a); *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 459–60 (6th Cir.1997) (determining that because the standards under both statutes are largely the same, cases construing Rehabilitation Act are instructive in construing ADA); *Doe v. Univ. of Md. Med. Sys. Corp.,* 50 F.3d 1261, 1264–65 n. 9 (4th Cir.1995) (applying the same analysis of ADA as of Rehabilitation Act because the language is the same). The United States Supreme Court analyzed Tennessee's Medicaid Program and found that a reduction in hospital services did create a disparate impact on handicapped individuals, but that the Rehabilitation Act required only that handicapped individuals have meaningful access to services. *Alexander v. Choate,* 469 U.S. 287, 304, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). The Act does not guarantee the handicapped equal results from state Medicaid provisions even if some measure of equality could be constructed. *Id.* The Supreme Court later reiterated this interpretation in finding that "[t]here is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons." *Traynor v. Turnage,* 485 U.S. 535, 549, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988).

### a. Decisions Regarding Distinctions in Workers' Compensation Schemes

{22} Several federal and state courts have relied on the Unites States Supreme Court's guidance in *Alexander* and *Traynor* to find that the ADA does not require that all disabled persons, regardless of the differences in each person's disabilities, receive equal eligibility for workers' compensation benefits. Workers in Florida challenged the Florida's workers' compensation scheme that awards benefits based on levels of physical impairment as violative of the ADA, arguing that persons with lesser impairment ratings and lesser benefits may be more disabled than persons with higher impairment ratings. *Cramer v. State of Fla.,* 885 F.Supp. 1545,

1550 (M.D.Fla.1995), *aff'd*, 117 F.3d 1258 (11th Cir.1997). The United States District Court found that the ADA "applies only to discrimination against disabled persons compared to non-disabled persons," *id.* at 1551, and held that the Florida Workers' Compensation Act (FWCA) did not violate the ADA even if disabled workers were treated differently. *Id.* at 1553. The court determined that disability statutes like the ADA do not ensure evenhanded treatment as compared to other disabled persons. *Id.; see also Harding*, 907 F.Supp. at 391–92 (finding, in a similar challenge, that the ADA does not require all disabled persons to receive equal eligibility requirements under FWCA benefits and finding that the FWCA complied with the ADA by providing "meaningful access to benefits to all disabled persons or injured workers").

{23} Florida state courts have reached a similar conclusion. *See Barry v. Burdines*, 675 So.2d 587, 589 (Fla.1996) (finding no discriminatory intent or result in FWCA scheme of impairment ratings and no violation of ADA because ADA does not guarantee equal rights to all disabled workers); *Hensley*, 686 So.2d at 728 (finding that Florida's decision to exclude FWCA compensation for mental or nervous injuries unrelated to compensable physical injury not inconsistent with the goals of the ADA).

The Oregon Court of Appeals also has found that its workers' compensation scheme that treats injured workers with preexisting conditions differently from injured workers with no preexisting condition is not in conflict with the ADA because the ADA does not require that all disabled persons have identical access to benefits of employment. *Bailey*, 959 P.2d at 87.

### b. Decisions Regarding Distinctions in Health and Human Services

{24} The Supreme Judicial Court of Massachusetts has determined that the purpose of the ADA is to provide equal opportunity for disabled citizens rather than to eliminate all differences in levels or proportions of resources allocated to individuals with differing types of disabilities. *Williams v. Sec'y of the Executive Office of Human Servs.*, 414 Mass. 551, 609 N.E.2d 447, 454–55 (1993) (holding that the state department of mental health's policy denying some mentally ill persons integrated housing opportunities does not violate ADA). Likewise, the Court of Appeals of Oregon has found that the ADA does not require that all disabled persons have identical access to benefits or that all differences in levels or proportions of resources allocated to individuals with differing types of disabilities be eliminated. *Ulrich v. Senior & Disabled Servs. Div.*, 164 Or.App. 50, 989 P.2d 48, 51 (1999).

### c. Decisions Regarding Distinctions Between Mental and Physical Disabilities in Insurance and Disability Policies

{25} In an issue that is analogous to Workers' claims, seven United States Circuit Courts of Appeal have found that employer-offered health and disability insurance policies that offer different levels of benefits for mental or nervous disorders than for physical disorders do not violate the ADA as long as the same distinctions apply equally to all employees. *See Equal Employment Opportunity Comm'n v. Staten Island Sav. Bank*, 207 F.3d 144, 149 (2nd Cir.2000) (acknowledging that ADA does not condemn the "historic and nearly universal practice inherent in the insurance industry of providing different benefits for different disabilities"); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir.2000) (finding no violation of Title I or Title III of ADA of employer's group disability insurance that gives more benefits for physical disabilities than mental disabilities); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1102 (10th Cir.1999) (holding that the ADA does not prohibit an employer from operating long term disability benefits plan that distinguishes between physical and mental disabilities); *Rogers v. Dep't of Health & Envtl. Control*, 174 F.3d 431, 436 (4th Cir.1999) (concluding that Title II of the ADA does not require South Carolina to provide the same level of benefits for mental and physical disabilities in its long term disability plan for state employees); *Lewis v. Kmart Corp.*, 180 F.3d 166, 172 (4th Cir.1999) (holding that Title I of ADA does

not require employer-sponsored long term disability plan to provide the same level of benefits for mental and physical disabilities); *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 608–10 (3rd Cir.1998) (finding that the ADA does not require equal coverage for every type of disability); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1019 (6th Cir. 1997) (concluding that the ADA does not prohibit insurance companies from differentiating between mental and physical disabilities); *Equal Employment Opportunity Comm'n v. CNA Ins. Cos.*, 96 F.3d 1039, 1045 (7th Cir.1996) (concluding that there is no discrimination pursuant to Title I of the ADA as a result of the distinction in CNA's long-term disability plan between mental health benefits and other benefits); *see also Modderno v. King*, 82 F.3d 1059, 1062 (D.C.Cir. 1996) (rejecting the discrimination argument under the Rehabilitation Act); *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 678 (8th Cir.1996) (holding that employer's denial of insurance coverage for fertility treatments was not discriminatory under the ADA because ADA only prohibits discrimination between the disabled and non-disabled), *abrogated on other grounds by La Porta v. Wal-Mart Stores, Inc.*, 163 F.Supp.2d 758, 770 n. 4 (W.D.Mich.2001).

{26} The only court that has concluded differently from the courts noted above, and the only case Workers rely on, is the United States Court of Appeals for the 11th Circuit in its decision in *Johnson v. K Mart Corp.*, 273 F.3d 1035, 1054 (11th Cir.2001) (finding that ADA prohibits a distinction in benefit payments between mental and physical disabilities). However, we note that the opinion was vacated and was then stayed until K Mart emerges from bankruptcy proceedings. *Johnson v. K Mart Corp.*, 281 F.3d 1368 (11th Cir.2002). Thus, this case has no binding effect on this or any other court, and we do not find it persuasive in any event.

### 3. New Mexico's WCA Does Not Violate ADA

{27} We come to the inescapable conclusion, as have the many federal and state courts discussed above, that the ADA does not require that the state or an employer confer the same benefits to people with different disabilities. New Mexico's WCA applies equally to all workers employed by employers who come within the Act. *See* NMSA 1978, § 52–1–2 (1987). It provides meaningful access to benefits for all workers, whether they are disabled due to mental or physical impairments. *See* §§ 52–1–41 and – 42; *Alexander*, 469 U.S. at 304, 105 S.Ct. 712. Workers Breen and Carrasco received the same benefits as any other covered worker would receive. They do not claim that they were denied benefits by reason of their disability as is prohibited by 42 U.S.C. § 12112(a) of the ADA. Rather, they claim that, because of their disabilities, they are due benefits that have not been provided. However, as determined by the many other courts discussed in this opinion, this is not a cognizable claim under the ADA because the ADA does not mandate equal treatment between disabled persons. Rather, the ADA mandates equal treatment of disabled persons with non-disabled persons. Accordingly, we hold that New Mexico's WCA, which treats persons with mental impairments differently from persons with physical impairments, does not violate the ADA.

### III. CONCLUSION

{28} We affirm the order of the Workers' Compensation Judge.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and CELIA FOY CASTILLO, Judges.