2005-NMCA-122

122 P.3d 1265

**NATIONAL BANK OF ARIZONA,**
Plaintiff–Appellee,

v.

**Eric Gregory MOORE, Defendant–
Appellant.**

and

**Patricia Mary Moore, as holder of inter-
est in community property shared
with Eric Gregory Moore,**

**Wells Fargo Bank of New Mexico,
N.A., Garnishee.**

**No. 24,549.**

Court of Appeals of New Mexico.

July 25, 2005.

Certiorari Denied, No. 29,445, Oct. 26, 2005.

Trent A. Howell, Holland & Hart, LLP, Santa Fe, NM, for Appellee.

Erik B. Thunberg, Erik B. Thunberg, P.C., Albuquerque, NM, for Appellant.

## OPINION

FRY, Judge.

{1} This case involves the enforcement of an Arizona judgment, domesticated as a New Mexico judgment, against an Arizona resident. The primary issue is whether the domesticated judgment, which is the separate debt of one spouse, may be satisfied by that spouse's one-half interest in community property located in New Mexico. The district court held that it could, relying on *Huntington National Bank v. Sproul*, 116 N.M. 254, 861 P.2d 935 (1993). We affirm.

## BACKGROUND

{2} Defendant Eric Gregory Moore (Husband) and Intervenor Patricia Mary Moore (Wife), who are Arizona residents, have been married for over thirty years. In 2000, Plaintiff National Bank of Arizona (the bank) obtained a judgment against Husband in an Arizona court. The bank filed suit in New Mexico seeking domestication of the judgment so that the bank could garnish an account at a Wells Fargo Bank in Santa Fe that belonged to Husband and Wife. The parties agree that the funds in this account are community property. The district court ordered domestication of the judgment. *See* Foreign Judgments Act, NMSA 1978, §§ 39–4A–1 to –6 (1989, as amended through 1994). Although the parties disputed the character of this debt below, on appeal there is no dispute that this judgment is the separate debt of Husband.

{3} When the bank attempted to garnish the New Mexico account, Husband and Wife each filed a claim of exemptions. Wife also filed a motion to dismiss, claiming that under Arizona law, "a judgment against one spouse is not collectible from the community property of both spouses." *See* Ariz.Rev.Stat. § 25–215(D)(10) (1973) (explaining that "[a] judgment against one spouse does not bind the community"); *Spudnuts, Inc. v. Lane*, 139 Ariz. 35, 676 P.2d 669, 670 (Ariz.Ct.App. 1984) (stating that community property is subject to execution to satisfy debts incurred during marriage by either spouse if both spouses are sued jointly on the debt). Husband joined in this motion.

{4} The district court held a hearing on the exemption claims and Wife's motion to dismiss. Husband and Wife argued that permitting collection of the New Mexico judgment from the community funds in the bank account would violate Arizona law, and thus, it would violate the clause in the United States Constitution requiring all states to give full faith and credit to the judgments and statutes of other states. U.S. Const. art. IV, § 1. They also argued that enforcement of the judgment against community property would violate their right to equal protection. In response, the bank relied on *Sproul* and argued that once the judgment was domesticated in New Mexico, it lost its character as an Arizona judgment and New Mexico law regarding execution of the judgment should apply. Under New Mexico law, a spouse's separate debt may be satisfied from that spouse's half interest in community property. NMSA 1978, § 40–3–10(A) (1995).

{5} The district court concluded that, consistent with *Sproul*, New Mexico law applied and would permit execution on Husband's one-half interest in the community funds in the New Mexico account to satisfy Husband's separate debt. Husband appealed.

## DISCUSSION

{6} Husband makes five arguments, which we have consolidated into three: (1) choice of law principles require the application of Arizona law; (2) applying New Mexico law to the execution of the judgment violates principles of full faith and credit, Husband's right to equal protection, and notions of comity; and (3) New Mexico public policy disfavors the re-characterization of property imposed by the district court's judgment.

### Standard of Review

{7} The issues require us to engage in choice of law analysis and the interpretation of New Mexico law. We therefore apply a de novo standard of review. *Blackwell v. Lurie*, 2003–NMCA–082, ¶ 7, 134 N.M. 1, 71 P.3d 509.

### Choice of Law Principles

{8} Husband appears to argue that Arizona law applies to the determination of exemptions by virtue of two basic legal principles. First, he argues that the character of property as community or separate is determined by the time and manner of its acquisition. *See English v. Sanchez*, 110 N.M. 343, 345, 796 P.2d 236, 238 (1990). Second, he contends that pursuant to the Restatement (First) of Conflict of Laws § 290 (1934), "[i]nterests of one spouse in movables acquired by the other during the marriage are determined by the law of the domicil of the parties when the movables are acquired." Thus, under these two principles, Husband maintains that because the New Mexico bank account was acquired during marriage by domiciliaries of Arizona, the account is Arizona community property and Arizona's exemption law should apply.

{9} While Husband's two points accurately reiterate the law applicable to the characterization of property as community or separate, there is no issue regarding the character of the funds in the bank account. Both Husband and the bank agree that the funds are community property. Consequently, there is no conflict of laws on this subject requiring resort to choice of law principles.

{10} The conflict of laws at issue here has to do with the enforcement of a domesticated judgment. If Arizona law applies, the bank cannot garnish community property funds in order to satisfy Husband's separate debt. *See Spudnuts, Inc.*, 676 P.2d at 670. If New Mexico law applies, the bank can satisfy the judgment against Husband out of Husband's one-half interest in the community funds. *See* § 40–3–10(A) (providing that "[t]he separate debt of a spouse shall be satisfied first from the debtor spouse's separate property, ... [and s]hould such property be insufficient, then the debt shall be satisfied from the debtor spouse's one-half interest in the community property").

{11} Our Supreme Court addressed the choice of law applicable to the enforcement of a domesticated judgment in *Sproul*. In that case, the husband, a New Mexico resident, signed a note with an Ohio bank. Upon default, the bank sued the debtor husband in Ohio and obtained a default judgment. The bank then filed suit in New Mexico and obtained domestication of the judgment. After filing a transcript of judgment in the debtor's county of residence, the bank then sued both the debtor and his wife to foreclose its lien on the couple's residence. The Supreme Court affirmed the district court's determination that, under New Mexico law, the judgment was a community debt that could be satisfied by foreclosure on community property. 116 N.M. at 255–56, 861 P.2d at 936–37.

{12} In concluding that New Mexico law applied to the action to enforce the judgment, the Supreme Court in *Sproul* stated that "[o]nce the New Mexico judgment was entered, the judgment obtained in Ohio lost its original identity as an Ohio judgment and became a money judgment of the state of New Mexico." *Id.* at 258, 861 P.2d at 939. "Because the Ohio judgment was converted into a New Mexico judgment, New Mexico law was applicable to its enforcement." *Id.* New Mexico law permits the satisfaction of a community debt with community property. *See* NMSA 1978, § 40–3–11(A) (1995).

{13} This principle applies with equal force here. Once the Arizona judgment was converted into a New Mexico judgment, New Mexico law was applicable to the enforcement of that judgment. Under Section 40–3–10(A), Husband's separate debt could be satisfied from his one-half interest in community property.

{14} We are not persuaded by Husband's attempts to distinguish *Sproul* from this case. Husband appears to argue that *Sproul's* principle is inapplicable here because, unlike Husband and Wife, the Sprouls were domiciliaries of New Mexico. Thus, Husband contends this case is more like *Blackwell*, 2003–NMCA–082, 134 N.M. 1, 71 P.3d 509. We do not agree.

{15} In *Blackwell*, this Court considered whether a Missouri judgment domesticated in New Mexico could be satisfied by execution on a sketch being held on consignment at a New Mexico gallery. *Id.* ¶¶ 1–4. The sketch was owned by the judgment debtor and his wife, both Missouri domiciliaries, as tenants by the entirety, a characterization of property that is no longer recognized by New Mexico law. *Id.* ¶¶ 8–9. Consequently, our statutes addressing the satisfaction of community and separate debts "make no mention of tenancies by the entirety." *Id.* ¶ 18; *see* §§ 40–3–10, –11. This Court held that "[b]ecause New Mexico law cannot be applied for the purpose of characterizing the debt, we necessarily apply the law of Missouri, the state in which all the other pertinent activity took place." *Blackwell*, 2003–NMCA–082, ¶ 18, 134 N.M. 1, 71 P.3d 509.

{16} We understand Husband to argue that because he and his wife are Arizona domiciliaries and because the debt was incurred in Arizona, "all the other pertinent activity" took place in Arizona, and Arizona law should apply. This argument misses the point of *Blackwell*. This Court made it clear that if the debt and the sketch could have been characterized under New Mexico law, the *Sproul* principle would apply and New Mexico law would govern the enforcement of the judgment. *Blackwell*, 2003–NMCA–082, ¶ 18, 134 N.M. 1, 71 P.3d 509 (noting that "we apply the New Mexico statutory provisions pertaining to satisfaction of the debt if the debt is characterized under New Mexico law"). Here, the character of the property and the debt is not at issue. The parties agree that the funds in the account are community property and the debt is Husband's separate debt. These are characterizations recognized by New Mexico law, and New Mexico law therefore applies to the enforcement of the domesticated judgment.

{17} Husband further urges us to adopt a distinction between "coming home" cases, where the creditor seeks to collect on a foreign judgment against a debtor who resides in New Mexico, and "on the road" cases, where a creditor seeks to collect on a foreign judgment against property located in New Mexico that is owned by a non-resident debtor. Husband does not cite any authority supporting such a distinction, and we see no

basis for adopting it. *See ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998–NMCA–078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (explaining that appellate court will not consider proposition in brief unsupported by citation to authority).

{18} To the extent Husband argues that the law applicable to the enforcement of the judgment against him depends on whether the bank account is Arizona community property as opposed to New Mexico community property, Husband did not make this argument below. We therefore decline to address this contention. *See Katcher v. Johnson Controls World Servs., Inc.*, 2003–NMCA–105, ¶ 21, 134 N.M. 277, 75 P.3d 877 (noting that "[t]o preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court" (internal quotation marks and citation omitted)).

### Equal Protection, Full Faith and Credit, and Comity

{19} Husband perfunctorily argues that enforcement of the Arizona judgment in accordance with New Mexico law violates his right to equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and the constitution's requirement that states give full faith and credit to the "public [a]cts, [r]ecords, and judicial [p]roceedings of every other [s]tate." U.S. Const. art. IV, {1. He also contends the district court's judgment violates notions of comity. We are not persuaded.

{20} With respect to Husband's equal protection argument, the initial inquiry "is whether the statute in question . . . results in dissimilar treatment of similarly situated [persons]." *Breen v. Carlsbad Mun. Schs.*, 2003–NMCA–058, ¶ 10, 133 N.M. 618, 67 P.3d 908. The statute in question does not treat similarly situated people differently. Under Section 40–3–10(A), the property of every person who is liable on a separate debt is subject to the same priority for satisfying the debt as the property of everyone else similarly situated. The fact that a different state might have a different scheme for debt satis-

faction does not translate into the conclusion that New Mexico's scheme is unfair.

{21} Husband's full faith and credit argument is answered by *Sproul,* where the Court explained that "[a] judgment, once converted into a New Mexico judgment, is entitled to the same enforcement procedures and remedies as a judgment originating in this state." 116 N.M. at 266, 861 P.2d at 947; *see also* Restatement (Second) of Conflict of Laws § 99 (1971) ("The local law of the forum determines the methods by which a judgment of another state is enforced."). The Court concluded that "[t]he principles of full faith and credit are not violated simply because the New Mexico judgment has greater force as a remedy than the underlying judgment would have in [the state of origin]." *Sproul,* 116 N.M. at 266, 861 P.2d at 947.

{22} Similarly, we do not think that notions of comity are at play here. "Judicial comity is the principle in accordance with which the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 16 Am.Jur.2d Conflict of Laws § 16 (1998) (internal quotation marks omitted). We have already concluded, based on *Sproul,* that applying New Mexico law to the domesticated judgment is consistent with the mandatory requirements of the United States Constitution's full faith and credit clause. While we could conceivably decide to apply Arizona law out of deference to that state, Husband does not provide any reasons that might persuade us to do so, other than a generalized concern that other states might not give deference to our law. We do not find this concern to have merit.

### Public Policy and Re-Characterization of Property

{23} Husband argues that the district court's "re-characterization" of Arizona exempt marital property violates public policy. We do not agree that the district court's judgment re-characterized the funds in the New Mexico account. There is no dispute that the funds are community property, regardless of whether the funds are characterized under New Mexico or Arizona law. *See* NMSA 1978, § 40-3-8(B) (1990) (stating that community property is "property acquired by

either or both spouses during marriage which is not separate property"); Ariz.Rev. Stat. § 25-211 (1998) (providing that community property is "[a]ll property acquired by either husband or wife during the marriage" unless the property is acquired by gift, devise, or descent, or if acquired after service of petition for dissolution of marriage, legal separation, or annulment). The issue is not one involving the characterization of either the funds or the debt; instead, the issue is whether to apply New Mexico's law regarding the enforcement of what is now a New Mexico judgment. Husband has cited no authority supporting the view that New Mexico law does not apply or that New Mexico law does violence to any recognized public policy, and we are therefore unpersuaded by his argument. *See ITT Educ. Servs., Inc.,* 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (explaining that appellate court will not consider proposition in brief unsupported by citation to authority).

### CONCLUSION

{24} For the foregoing reasons, we affirm the district court's judgment permitting execution on Husband's one-half interest in the community funds in the New Mexico bank account.

{25} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and RODERICK T. KENNEDY, Judges.