SUTIN, Judge (concurring in part and dissenting in part). {45} I concur in the majority’s resolution of the comity question. I respectfully dissent in regard to the majority’s approbation given to the district court’s application of the place-of-the-wrong rule. A. INTRODUCTION: Dr. Frezza’s Points on Appeal {46} Dr. Frezza’s points on appeal, aside from the writ of error issue, are that (1) the place-of-the-wrong rule and public policy concerns require that Texas law apply to Ms. Montaño’s claims, and (2) the doctrine of comity requires the application of Texas law. The Texas law to which Dr. Frezza refers is the TTCA. 1. The Place-of-the-Wrong Point {47} In his motion to dismiss, Dr. Frezza asserted that the TTCA applied under the doctrine of comity because Texas was the place of the wrong. He indicates that the district court determined that he was not entitled to immunity from suit under the TTCA because, based on the place-of-the-wrong rule and on principles of comity, New Mexico law applied. Dr. Frezza erroneously conflates two distinct doctrines. Further, in arguing the place-of-the-wrong rule, Dr. Frezza relies on New Mexico conflict-of-laws cases having nothing to do with the circumstance of competing foreign state and forum state sovereign immunity laws and interests requiring a comity analysis. See Torres, 1995-NMSC-025; Terrazas, 2006-NMCA-111; In re Estate of Gilmore, 1997-NMCA-103. {48} Ms. Montaño buys in to the confusing and erroneous application of the place-of-the-wrong rule. She argues that the place of the wrong is New Mexico and that the district court properly determined that the nexus of facts pled by her raised both a question of choice of law (meaning selecting, pursuant to a conflict-of-laws analysis, the law of one state over another pursuant to a place-of-the-wrong rule analysis) and comity. {49} Although they combine the application of the place-of-the-wrong rule with the rule of lex loci delicti (lex loci), neither Dr. Frezza nor Ms. Montaño says what particular New Mexico law was to be applied under the place-of-the-wrong rule as to Dr. Frezza’s immunity defense. In ruling that the place-of-the-wrong rule applied, that the place of the wrong was New Mexico, and that the law to be applied was New Mexico law, the district court also failed to indicate what New Mexico law applied to Dr. Frezza’s immunity defense. 2. The Comity Point {50} Separately addressing comity, Dr. Frezza says that, in addition to the fact that Texas is the place of the wrong, “principles of comity require the application of Texas law[,]” namely, the immunity provided under the TTCA. He discusses solely the TTCA and the NMTCA in the bout between the immunity provisions within sovereigns’ tort claims acts. Dr. Frezza analyzes the four factors in Sam, 2006-NMSC-022, ¶¶ 22-28. As to the state-interest factor, Dr. Frezza seems to again insert the place-of-the-wrong and lex loci rules into the comity analysis when he argues that “New Mexico’s interest is limited by virtue of the fact that all of the alleged negligent acts occurred in Texas},]” and thus that the TTCA applies under comity. Ms. Montaño’s comity analysis, of course, ends with comity not extendable to Texas. Following a Sam analysis, the district court denied Dr. Frezza’s motion to dismiss insofar as it was based on his comity position that the TTCA applied. B. DISCUSSION: Misplaced Application of the Piace-of-the-Wrong Rule 1. Application of the Place-of-the-Wrong Rule — What Ifs? {51} The choice-of-law, conflict-of-laws analysis path chosen by the district court and the parties begged the unanswered question: When the determination is made that New Mexico law applies, which New Mexico law is to be applied? If New Mexico law on sovereign immunity is the law to be applied, that law would be the NMTCA. If the NMTCA were to be applied, the question necessarily becomes, can the NMTCA apply to claims against a physician for medical negligence when the physician is an employee of a Texas governmental entity and is not an employee of a New Mexico governmental entity? {52} The answer to the foregoing question is that the NMTCA cannot be applied to that physician. In particular, because Dr. Frezza is not employed by a New Mexico governmental entity, the NMTCA cannot be applied to him. See § 41-4-3(B), (C), (F), (H). The upshot is that, given that the NMTCA does not apply to Dr. Frezza and barring the application of the TTCA, his existence as a medical malpractice defendant in a New Mexico lawsuit is such that he would have no New Mexico immunity from suit. Neither the parties nor the district court engaged in any such analysis. {53} Questions arise: Were the district court to have determined that Texas law instead of New Mexico law applied as to Dr. Frezza’s immunity defense and that the TTCA applied, would this then have foreclosed any comity analysis? Would Torres have been applicable to override on public policy grounds, the application of the TTCA? See Torres, 1995-NMSC-025, ¶¶ 13-14 (holding that, in a choice-of-law and conflict-of-laws, place-of-the-wrong analysis, based on New Mexico’s public policy, New Mexico law would control notwithstanding that the place of the wrong was California). W ould a Torres override on public policy grounds be a decision tantamount to a refusal to extend comity? {54} It is noteworthy that in Sam our Supreme Court noted that this Court in Sam v. Estate of Sam, 2004-NMCA-018, ¶ 15, 135 N.M. 101, 84 P.3d 1066, rev’d by 2006-NMSC-022, employed a choice-of-law, place-of-the-wrong rule analysis. See Sam, 2006-NMSC-022, ¶ 7. Our Supreme Court in Sam appears to have purposely chosen to disregard the place-of-the-wrong rule and to stick solely to comity, see id. ¶¶ 7-8, although one might infer that, in reversing this Court, our Supreme Court was not disregarding the place-of-the-wrong rule in the case, but was holding that the place-of-the-wrong rule was not applicable. It is also noteworthy that, in Sam, the Supreme Court also mentioned that this Court, in Sam, 2004-NMCA-018, ¶ 14, also determined that the NMTCA was inapplicable “because [the plaintiff] was not employed by New Mexico and was therefore not covered by [the NMTCA].” Sam, 2006-NMSC-022, ¶ 6. We have no indication whether the Supreme Court considered the significance of this Court’s determination that the plaintiff in Sam was not employed by New Mexico and not covered under the NMTCA. 2. Misapplied Place-of-the-Wrong Rule {55} The foregoing questions and conundrums aside, the place-of-the-wrong rule had no place in this comity case. None of the choice-of-law, conflict-of-laws, place-of-the-wrong/iex loci rule New Mexico cases, including in particular, Gilmore, Terrazas, and Torres, are comity cases. As well, and notably, neither our Supreme Court in Sam, nor the United States Supreme Court in Hyatt and Hall, on which Sam relied, engage in a place-of-the-wrong or lex loci analysis. See Hyatt, 538 U.S. 488; Hall, 440 U.S. 410. It was error for the district court to rely on and apply the place-of-the-wrong and lex loci rules in regard to the immunity defense issue in this case. I therefore disagree with the majority’s “perceiv[ing] no error in the district court’s . . . place-of-the-wrong analysis},]” see Majority Op. ¶ 12, which brings me to Sam and comity, and also to the majority’s opinion on comity in the present case. C. DISCUSSION: Sam {56} Sam involved the issue whether New Mexico claimants suing an Arizona government employee in New Mexico were barred by the Arizona Tort Claims Act’s one-year statute of limitations, the NMTCA’s two-year statute of limitations, or New Mexico’s three-year general statute of limitations for tort actions. Sam, 2006-NMSC-022, ¶ 7; Sam, 2004-NMCA-018, ¶¶ 13-15 (setting out the three statutes of limitations). The action was filed just before three years had run. Sam, 2006-NMSC-022, ¶ 3. {57} On appeal from the district court decision in Sam, this Court determined that the NMTCA did not apply to an Arizona government employee, Sam, 2004-NMCA-018, ¶ 13. Citing Hyatt and Hall, we held that “New Mexico, as the forum state in this case, is not required to recognize Arizona’s statute of limitations attaching or the sovereign immunity granted to its public employees.” Sam, 2004-NMCA-018, ¶ 13. We further held that the NMTCA was inapplicable because the plaintiff “was not a public employee covered under our Tort Claims Act.” Id. ¶ 14. Declaring that sovereign immunity and public employment were irrelevant to the issues in the case, this Court turned to the place-of-the-wrong rule as applied in Torres and held that “because the accident resulting in [the victim’s] death occurred in New Mexico, New Mexico’s three-year statute of limitations [in NMSA 1978, Section 37-1-8 (1976)] applies to this suit.” Sam, 2004-NMCA-018, ¶ 15. In a certiorari proceeding, our Supreme Court saw the case differently and reversed this Court. Sam, 2006-NMSC-022, ¶¶ 1, 20. {58} The issue before our Supreme Court in Sam was whether the New Mexico district court should, as a matter of comity, recognize the sovereign immunity of a sister state, Arizona. Id. ¶ 1. Sam stated at the outset that it would discuss “what factors a New Mexico court should consider to determine if comity should be extended.” Id. ¶ 8. Sam analyzed Hall and stated that the difference between California and Nevada law as to a cap on damages “was sufficient for California to justify not extending comity.” Sam, 2006-NMSC-022, ¶ 17. Sam declared that “[a]s a general rule, comity should be extended. Only if doing so would undermine New Mexico’s own public policy will comity not be extended.” Id. ¶ 21. {59} In Sam, our Supreme Court at the outset indicated that the question was whether, with respect to the plaintiffs claim, the Arizona Tort Claims Act’s one-year statute of limitations should be applied under comity, whether the NMTCA’s two-year statute of limitations, or whether the New Mexico three-year statute of limitations on common law tort claims, should be applied. Id. ¶¶ 1, 3. The Court noted that Arizona and New Mexico both waived sovereign immunity with respect to the plaintiffs claim, but further noted that the waiver of sovereign immunity was “restrained by strict statutes of limitations.” Id. ¶ 1. {60} The Court in Sam addressed whether it should extend comity to Arizona for application of Arizona’s one-year statute of limitations, holding that “we believe that New Mexico should extend a limited grant of immunity to Arizona because both states have done so through tort claims acts. However, we should only extend New Mexico’s two-year statute of limitations instead of applying Arizona’s one-year statute of limitations.” Id. ¶ 27. The Court did not apply Arizona’s tort claims act’s one-year statute. Id. ¶¶ 20, 27. The Court decided to “extend a limited grant of immunity to Arizona” and also to “extend [the NMTCA’s] two-year statute of limitations.” Id. ¶ 27 (emphasis added). Thus, in regard to Dr. Frezza’s immunity defense, in its analysis of whether to extend comity, instead of using the words “apply” or “application” with reference to law, our Supreme Court chose the word “extend” — that is, under the comity analysis, New Mexico would (1) “extend” immunity to Arizona, and (2) at the same time would “extend” the New Mexico statute of limitations “as a matter of comity” or “based on the principles of comity” or “through comity” to Arizona. Id. ¶¶ 13,20, 22, 27. {61} What I glean from Sam is that: (1) the Court extended comity to Arizona with respect to Arizona’s limited sovereign immunity waiver, leaving Arizona immunity in place and applicable, but did not extend comity with respect to Arizona’s statute of limitations; and (2) the Court, without expressly saying so, under principles of comity actually applied the NMTCA statute of limitations in place of Arizona’s statute of limitations as though the NMTCA statute of limitations was Arizona law. The Court employed the notion “extending” a New Mexico law, namely, NMTCA provisions, presumably because those provisions cannot “apply” to a person who is not an employee of a New Mexico governmental entity. {62} I am unaware of how New Mexico, by extending comity to Arizona by recognizing the sovereign immunity provision in the Arizona tort claims act, also under or based on comity or comity principles “extends” the NMTCA statute of limitations provisions “to Arizona” or “to an Arizona public employee.” Sam, 2006-NMSC-022, ¶¶ 13, 20, 27 (emphasis added). I do not find support in either Hyatt or Hall for applying the doctrine of comity or its principles by “extending” the NMTCA to the sister state, in effect incorporating the NMTCA into Arizona’s tort claims act. I am unaware of any cases outside of Sam that resolves comity issues in this manner. D. DISCUSSION: Following Sam Here {63} The majority essentially follows in Sam’s footsteps, stating that its “conclusion is consonant with Sam[.]” Majority Op. ¶ 40. Like in Sam, which “extended” the NMTCA’s two-year statute of limitations to an Arizona government employee to bar a claim filed in New Mexico against that employee — a person clearly not covered under the NMTCA — the majority “uses” the NMTCA’s waiver of immunity to strip Dr. Frezza of immunity, when Dr. Frezza clearly is not covered under the NMTCA. The majority does not use the words “extend” or “extend under comity or comity principles.” The majority states that “it is appropriate to use the NMTCA to provide the contours — or measure — of the immunity Dr. Frezza should enjoy,” Majority Op. ¶ 41 (emphasis added), and further states that NMTCA’s immunity-related provisions “should be coextensive with the immunity enjoyed by New Mexico governmental agencies and employees. Majority Op. ¶ 39 (emphasis added). {64} In resorting to the words “extending,” “coextensive,” and “use,” the Court in Sam and the majority here employ legal fictions. Sam and the majority have created theories or methodologies by which NMTCA provisions either become a part of or replace a provision in a sister state’s tort claims act to bar a claim (as in Sam) or to bar a defense (as in the case here). {65} It may well be that the legal-fiction approach necessarily must be employed to arrive at a satisfactory result in these sovereign immunity, comity circumstances. Given Sam, I cannot fault the majority’s approach here. The majority tweaks the Sam analysis by discarding the notion of “extending” the NMTCA to the sister state. The majority’s “use” and “coextensive” theories are, according to the majority, “consistent” with Sam. The majority’s word selection perhaps more descriptively suggests what the Court in Sam was doing. {66} I go along with the majority’s resolution albeit there exists no underlying explanation as to how a Texas resident and government employee with TTCA immunity, who is recognized as such when sued in New Mexico, will in essence be treated as a New Mexico resident and New Mexico government employee, consistent with or under the NMTCA, with no immunity, when, in all probability, he will be denied any benefit under the NMTCA and may even receive no TTCA protection. With the understanding that the TTCA violates New Mexico public policy, I go along, given the apparent absence of a better resolution based on any underlying rational support and given the incomplete manner in which the case was developed and handled on Dr. Frezza’s motion to dismiss.[3] {67} Comity policy resides with each state in dealing with sovereignty issues such as those in the case before us. See Hall, 440 U.S. at 425-26. State courts exercise reasonable discretion through practical wisdom and general fairness in their judicial-law-making determinations and development. See Albert Tate, Jr., The Law-Making Function of the Judge, 28 La. L. Rev. 211, 214-17 (1968). This function is appropriate in our policy-driven comity circumstance. Note Judge Tate’s poignant view: I . . . emphasize again what all lawyers know and what few laymen can deny: That the ordinary and customary operation of our judicial process requires the courts on occasion to create law-rules where needed to decide the case[] and that these law-rules operate with prospective effect to regulate the clashes of similar interests in the future, in much the same manner (although more limited in scope) as does a new statute. Id. at 217. The import of a legal fiction into a law-rule where needed to decide the case can be appropriate, if done through practical wisdom and general fairness, as long as we recognize and make clear what we are doing and why we are doing it. Although there might be a different solution for the case before us than to employ a legal fiction,[4] I am satisfied that the methodology employed is consistent with reason and fairness and appropriate in this case. That is why I concur in the majority’s solution. JONATHAN B. SUTIN, Judge I note that the standard of review in Sam for a court’s analysis under comity is abuse of discretion. See Sam, 2006-NMSC-022, ¶ 12. I am unsure why that standard was chosen. One would think that the standard would be de novo, given (1) the claimed error was the district court’s denial of a motion to dismiss under Rule 1-012(B)(6), and (2) the underlying question is whether the TTCA violates New Mexico public policy. See Sam, 2006-NMSC-022, ¶ 9 (stating that wc generally view a denial of a motion to dismiss de novo); Nat’l Bank of Ariz. v. Moore, 2005-NMCA-122, ¶¶ 6-7, 138 N.M. 496, 122 P.3d 1265 (indicating that we review de novo whether New Mexico public policy is violated). One might offer a possible alternative comity solution by determining that there exist two strong New Mexico public policies militating against granting immunity to physicians sued in New Mexico for medical malpractice: one, lack of immunity under the NMTCA; two, lack of immunity for a non-New Mexico government physician sued for medical malpractice in New Mexico. If the TTCA violates both policies, New Mexico courts will not extend comity to Texas on immunity. The statutes and common law related to medical malpractice actions control. Under those laws, the physician has no New Mexico immunity. It is doubtful that this analysis would “fly” under Sam, considering that Sam appears to have chosen not to explore public policy underlying the three-year statute of limitations and whether the Arizona statute offended that public policy.